### LEAYCRAFT & CO. v. UNITED STATES.

#### (Circuit Court of Appeals, Second Circuit. April 13, 1904.)

#### No. 156.

1. CUSTOMS DUTIES—CLASSIFICATION—ARROWROOT STARCH.

> *Held*, that the provision in paragraph 478, Tariff Act July 24, 1897, c. 11, § 2, Free List, 30 Stat. 195 [U. S. Comp. St. 1901, p. 1680], for "arrow-root in its natural state and not manufactured," relates to the tubers or root of the arrowroot plant, though no importations are ever made in that form, and does not include the article commercially known as arrow-root, consisting of starch made from arrowroot tubers, which is more properly classifiable as "starch," under paragraph 285 of said act (Act July 24, 1897, c. 11, § 1, Schedule G, 30 Stat. 173 [U. S. Comp. St. 1901, p. 1653]).

Appeal from the Circuit Court of the United States for the Southern District of New York.

For decisions below, see 124 Fed. 999, and G. A. 4,491, T. D. 21,-405.

Stephen G. Clarke, for appellants.

D. Frank Lloyd, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

WALLACE, Circuit Judge. The importations in controversy were arrowroot in its starchy form, answering the dictionary definitions, which describe it as "a nutritive starch obtained from the root stalk" of several species of the maranta, "a plant which grows in the West Indies, and which was considered a specific for the wounds caused by poisoned arrows; hence its name." "In its preparation the tubers are mashed, and the pulp soaked in water. This dissolves out the starch, which is separated from the fibers by settling, and the water is then drawn off, and the starch cleansed, and finally dried in the sun."

The question is whether the importations fall within the enumeration of paragraph 478 of the tariff act of July 24, 1897, c. 11, § 2, Free List, 30 Stat. 195 [U. S. Comp. St. 1901, p. 1680], whereby "arrowroot, in its natural state, and not manufactured," finds a place upon the free list. They were subjected to duty under paragraph 285, of that act (section 1, Schedule G, 30 Stat. 173 [U. S. Comp. St. 1901, p. 1653]), as "starch, including all preparations from whatever substance produced, fit for use as starch." The two provisions, read

together, are to be construed as though they read, "starch * * * one and one-half cents per pound; but if arrowroot in its natural state and not manufactured, free."

The Board of General Appraisers and the court below held that the importations were not arrowroot, within the meaning of paragraph 478. In view of the fact, which seems to be established by the evidence, that the tuber is never imported into this country, it is difficult to understand why Congress should have taken pains to put it upon the free list, because there was no necessity for exempting from duty an article which practically is never subjected to duty. In the absence of any light from the previous tariff legislation, there would be fair room for argument that Congress meant to exempt the article from duty in its starchy form or crude condition. On the other hand, the term "arrowroot in its natural state" is the equivalent of the term "arrowroot in a state of nature," and that description would hardly fit an article which has been subjected to the various processes which have been mentioned by which it is converted into the starch. The previous tariff legislation, however, indicates that Congress was not unmindful of the distinction between arrowroot in its starchy form and in its natural state, and that its later legislation was intended to remove the former from the free list by exempting from duty only the root in its natural state, in case any might possibly be imported. The tariff act of March 3, 1883, c. 121, 22 Stat. 488, placed the article upon the free list by enumerating it simply as "arrowroot." By that designation, of course, the arrowroot of commerce, which is the same thing as the arrowroot of the dictionary definitions, was exempt from duty. By the tariff act of October 1, 1890, the article was placed upon the free list by the description "arrow root, raw or unmanufactured." This description narrows that of the former tariff act, and suggests the intention of Congress to place the root only upon the free list. The next succeeding tariff legislation, which was the act of August 27, 1894, describes the article similarly as "arrow root, raw or unmanufactured." The next succeeding tariff legislation is the act now in question, and the phraseology employed in paragraph 478 would seem intended to remove any doubt which might possibly arise from the provisions of the acts of 1890 and 1894, and to make more explicit the intention of Congress to withdraw arrowroot in its starchy or commercial form from the free list, and exempt from duty only the arrowroot in its natural state, as distinguished from any state to which it may be advanced by treatment.

The decision of the Board of Appraisers and of the court below is affirmed.