## ISLER & GUYE *v.* UNITED STATES (No. 1955).[1]

1. CONSTRUCTION, PARAGRAPH 347, TARIFF ACT OF 1913—ARTIFICIAL LEAVES AND FLOWERS.

Certainly not every bended straw or twisted shaving can amount to an artificial and ornamental flower or leaf within the meaning of paragraph 347, tariff act of 1913. Articles made of straw and chip in natural colors, too fragile and crude to be used as millinery ornaments, but imported as raw material for making them, not resembling fruits, grains, leaves, flowers, and stems, or parts thereof, are not to be classified under this paragraph as "artificial and ornamental fruits. grains, leaves, flowers, and stems, or parts thereof."

2. CONSTRUCTION, PARAGRAPH 368, TARIFF ACT OF 1913—"NATURAL STATE"—"SEPARATED FIBERS"—AIDED BY LANGUAGE OF PREVIOUS ACTS AND BY CONTEXT—CHANGE OF LANGUAGE SIGNIFYING CHANGE OF MEANING.

Paragraph 272, tariff act of 1913, levying duty upon floor mattings, makes straw include both round and split straw. Paragraph 335 defines the terms grass and straw as meaning "these substances in their natural form and structure, and not the separated fiber thereof." Paragraph 368 defines the terms as meaning "these substances in their natural state, and not the separated fibers thereof." Paragraphs 409 of the act of 1897 and 422 of the act of 1909, the predecessors of paragraph 335 of the act of 1913, defined the terms in the same language as does paragraph 335 of the act of 1913. So also did the ancestors of paragraph 368 of the act of 1913—354 (1894), 449 (1897), and 463 (1909). But, in paragraph 368 of the act of 1913, the expression "in their natural form and structure" was changed to the expression "in their natural state." Obviously, this change must be accorded a meaning and obviously the expression "in their natural state" is broader than the expression "in their natural form and structure." The expression of paragraph 368, tariff act of 1913, "in their natural state, and not the separated fibers thereof," will not be construed so as to make the first phrase simply antithetical of the second. The purpose of Congress was to exclude from the paragraph by this provision grass and straw cloth made of grass and straw fibers, which are provided for elsewhere; and the paragraph comprehends split straw, so long as the splitting has not resulted in a decortication of the fibers.

3. MILLINERY MATERIAL OF SPLIT STRAW AND CHIP.

Split straw and chip material for the manufacture of millinery ornaments, too crude for classification under paragraph 347, tariff act of 1913, as artificial and ornamental fruits, grains, leaves, flowers, and stems, or parts thereof, are dutiable as manufactures of chip and straw, under paragraph 368.

### United States Court of Customs Appeals, March 10, 1920.

APPEAL from Board of United States General Appraisers, Abstracts 42662 and 42734, and unpublished decision of December 11, 1918.
[Modified.]

*Walden & Webster* (*Henry J. Webster* of counsel) for appellants.

*Bert Hanson*, Assistant Attorney General (*Harry M. Farrell*, special attorney, of counsel), for the United States.

[Oral argument Oct. 14, 1919, by Mr. Webster and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The merchandise, the dutiable status of which is here in question, is represented by five samples. Four thereof (Nos. 1 to 4) are made of

---

[1] T. D. 38339 (38 Treas. Dec., 243).

split straw, and one (No. 5) of chip. All are alleged to be fashioned so as to represent leaves and flowers. All of this merchandise was rated for duty under paragraph 347 of the tariff act of 1913, as artificial and ornamental fruits, grains, leaves, flowers, and stems, or parts thereof.

While it is said that the different articles herein represent certain leaves, they are neither of the color nor size thereof, but are seemingly the raw material therefor being made of straw and. chip in natural colors. Moreover, as imported, the testimony shows they are not used as millinery ornaments, being obviously too crude and fragile, but only in combination with or to make such ornaments. They are, therefore, as imported, not millinery ornaments, but materials to be used for such manufactures. Indeed, as imported, these imitations are so crude and so unlike in size, shape, and color the leaves and flowers of the field, forest, and garden, within the common knowledge of all, that only the wildest stretch of the imagination would dignify them as imitations of any of those works of nature ever pleasing to the eye. They *may* be ornaments, crude and fragile, but assuredly they do not in the remotest degree approximate or seem to resemble those perfections of nature. Certainly not every bended straw or twisted shaving can amount to an artificial or ornamental flower or leaf.

Do they fall within paragraph 368 of said act as manufactures of straw?

This claim presents for decision the proper construction of that part of paragraph 368 of the tariff act of 1913, reading:

The terms "grass" and "straw" shall be understood to mean those substances in their natural state, and not the separated fibers thereof.

The serious controversy here centers upon the interpretation to be given the word "straw" in its "natural state and not the separated fibers thereof." Is straw once split within that provision of the statute? Consideration will be facilitated by quoting the provisions of the tariff act of 1913 in pari materia, each of which has a bearing upon and influences the correct interpretation of the others and those singly.

272. Floor mattings, plain, fancy, or figured, including mats and rugs, *manufactured from straw, round or split*, or other vegetable substances, not otherwise provided for in this section, and having a warp of cotton, hemp, or other vegetable substances, *including what are commonly known as* China, Japan, and India *straw matting*. * * *. [Italics ours.]

335. Braids, plaits, laces, and willow sheets or squares, composed wholly or in chief value of straw, chip, grass, palm leaf, willow, osier, rattan, real horsehair, cuba bark, or manila hemp, suitable for making or ornamenting hats, bonnets, or hoods, not bleached, dyed, colored, or stained, 15 per centum ad valorem; if bleached, dyed, colored, or stained, 20 per centum ad valorem; hats, bonnets, and hoods, composed wholly or in chief value of straw, chip, grass, palm leaf, willow, osier, rattan, cuba bark, or manila hemp, whether wholly or partly manufactured, * * *. But the

terms "grass" and "straw" shall be understood to mean these substances in their natural form and structure, and not the separated fiber thereof.

368. Manufactures of bone, chip, grass, horn, india rubber or gutta-percha, palm leaf, quills, straw, weeds, or whalebone, or of which any of them is the component material of chief value not otherwise specially provided for in this section, shall be subject to the following rates: Manufactures of * * * grass, straw, and weeds, 25 per centum ad valorem; * * *. The terms "grass" and "straw" shall be understood to mean these substances in their natural state, and not the separated fibers thereof.

Paragraph 335 of the tariff act of 1913 was the legislative successor of paragraph 422 of the act of 1909. The last phrase in each was copied verbatim and is in the exact words of that phrase as it appeared in the tariff act of 1897 (par. 409). So, in the predecessor paragraphs to 368, act of 1913, which were paragraph 463, act of 1909; paragraph 449, act of 1897, and paragraph 352, act of 1894, this pertinent provision was in precisely identical language as in paragraph 335 aforesaid. It was a tried phrase of certain meaning employed in all the aforesaid paragraphs in pari materia. But in paragraph 368 of the act of 1913 Congress changed the language of this definition of "straw," and in lieu of the words "in their *natural form and structure*" inserted the words "in their *natural state*." Accordingly, in the act of 1913, Congress has declared that "straw" in paragraph 335 shall be held to be straw in its "natural form and structure," while in paragraph 368 Congress has declared that it shall be construed as straw in its "natural state." At the same time in paragraph 272 Congress expressly uses the word straw as including straw both "round or split," and declares matting of both such to be "commonly known" as "straw matting." [Italics ours.]

This court in United States v. Gage Bros. & Co. (8 Ct. Cust. Appls., 306; T. D. 37584) construed this provision, holding the component phrases "in their natural state" and "not the separated fibers" were not merely coextensive and mutually explanatory or definitive terms, but that the former was broader than the latter and excluded from the paragraph dyed straw as not in its "natural state." The point was again urged upon the court in United States v. International Forwarding Co. (8 Ct. Cust. Appls., 378; T. D. 37632), the court adhering to its former ruling and pointing out in support thereof the significant aforesaid legislative change of language. The court said:

We may add one reason in support of the decision to those which are set out therein. In paragraph 463 of the tariff act of 1909 the proviso which corresponds with that now under review was expressed in the following words:

But the terms "grass" and "straw" shall be understood to mean these substances in their natural form and structure, and not the separated fiber thereof."

At the tariff revision of 1913 the words "natural form and structure" were omitted from the proviso, and in their place appeared the words "in their natural state," the proviso not being otherwise amended. It is manifest that the latter words are

more comprehensive than the former ones.   When the proviso specified the "natural form and structure" of the grass and straw as a criterion, it may have been susceptible to the interpretation that it was intended to imply simply a negative of the clause "and not the separated fiber thereof."   But as amended the proviso no longer relates to the "natural form and structure" only of the component grass and straw, but to their "natural state" instead.   It seems clear, therefore, that something more than form and structure are intended by the present words of the proviso, and this effect is given them by the decision in the case just cited.

The records of the Congress afford no literal reason for this change which was had in the Ways and Means Committee as the bill was originally reported, but the hearings before the Committee on Ways and Means (Vol. V, pp. 4987–5009) upon the subject matter of the paragraph in pari materia (par. 335), disclose strenuous contention for the retention of a differential duty upon straw manufactures when dyed and when not dyed.   Congress retained this differential in that paragraph by express language and by the same act made the stated change in the language of paragraph 368, which this court held in the cases, supra, to accomplish that congressional purpose as to the latter paragraph.   Accordingly the purpose assigned by the court to Congress in this paragraph has upon full hearings been more expressly worded in paragraph 335.

If the court shall observe that cardinal rule of construction that a difference in language must, when possible and consistent with the act, be accorded a difference in meaning it is difficult to understand how any other conclusion can be reasonably attained.

Reading together the two paragraphs 335 and 368 in pari materia, we find that by 335 straw manufactures when dyed bear a different rate of duty than when undyed.   If we are to harmonize the paragraphs and read therefrom a consistent purpose of Congress, that can only be done by reading the words "natural state" in the latter paragraph to exclude dyed straw.   So, if we are to give a different meaning to the words "in their natural form and structure" in paragraph 335 from the words "in their natural state" substituted therefor by Congress in paragraph 368, the latter must be held to comprehend a condition not relating to the "form and structure" of straw.   "Form and structure" necessarily relate to the condition of straw whether split or round.   "Natural state" does not so necessarily relate but can be satisfied by other conditions such as "dyed." Accordingly it would seem that Congress did not intend by the substituted use of the words "natural state" to comprehend thereby the form and structure of the straw, whether or not split, but as held by this court, whether or not dyed, or, etc.

It having been determined by the court that the two phrases are to be read not as synonymously definitive, but as separate and contrastedly descriptive, that use would seem to indicate that the general congressional concept of the one may be gleaned from the other.

The New Standard Dictionary (1916) gives the following definitions:

Straw. 1. A stalk, stem, *or piece of a stalk or stem,* of various grains, especially wheat, rye, oats, barley, and buckwheat, * * *. [Italics ours.]

Fiber. 1. A fine filament; a slender or thread-like component of a substance, as of wood, muscle, connective tissue, or spun glass; an individual filament, as of wool or cotton. 2. A structure composed of filaments. Especially: (1) Any substance that may be separated into threads for spinning, weaving, etc.; as, woody fiber; the fiber of hemp, flax, or wool; muscular fiber. (2) A lengthened bast-cell. (3) A filamentous root; also, a rootlet.

The Century Dictionary and Cyclopedia (1911) thus states:

Straw. 1. The stalk or stem of certain species of grain, pulse, etc., chiefly of wheat, rye, oats, barley, buckwheat, and pease, *cut or broken off* (and usually dry); *also, a piece of such a stem.* [Italics ours.]

Fiber. 1. A thread or filament; any fine threadlike part of a substance, as a single natural filament of wool, cotton, silk, or asbestos, one of the slender terminal roots of a plant, a drawn-out thread of glass, etc.

Fibers, therefore, of straw like the fibers of flax, hemp, ramie, and other fibrous growths are the thread-like muscles thereof, which encased with pithy nonfibrous substances constitute the straw, and the "separated fibers" of paragraph 368 must refer to these filaments when decorticated or otherwise stripped of all pithy nonfibrous substances as in the preparation for weaving. On the other hand "straw," whether round or split, is this substance in its natural form and structure; that is, fibers surrounded with the pith holding the same together as in nature—not decorticated or otherwise separated, though by splitting "pieces" of the straw may be separated into split straw, not separated fibers.

Indeed the definitions of "straw" seem to include both kinds of straw "round or split," for what "piece" can there be of a "cut or broken off" straw save a split piece within the above definition ?

But, however that may be, Congress having expressly repealed that part of this paragraph requiring straw to be in its "natural form and structure" and required only that it be in its "natural state" we think Congress thereby intended this provision to comprehend straw both round and split or otherwise, so long as it remains "straw" and so long as it had not become the "separated fiber" of straw.

The undoubted purpose of Congress was by this provision to exclude from this paragraph grass and straw cloth made of the fibers of such and otherwise provided for as manufactures of vegetable fiber. (See par. 284.)

This view accords with that of the Circuit Court of Appeals for the Second Circuit announced in Zanmati & Co. *v.* United States (153 Fed., 880). The question there was whether or not mushrooms *sliced* and dried were within the term "vegetables in their natural state." The court said: "Here the mushrooms have not

been subjected to any process whereby their condition is changed or advanced from a state of nature." That case was cited and quoted with approval by this court in Andrews & Co. *v.* United States (8 Ct Cust Appls., 68; T. D. 37199). Therein this court adverts frequently to the fact that tagua nuts *sawed* into various sizes were by long administrative practice admitted free as "vegetable ivory in its natural state."

Support of the principle is had by numerous authorities and decisions based upon the interpretation of the phrase "natural state" as it appears in other paragraphs of this and former tariff acts. The court, however, is of the opinion that the legislative history of this phrase as it appears in paragraph 368, read in conjunction with its use in other paragraphs in pari materia of the act, most strongly points to the congressional purpose to comprehend herein straws both whole and split, so long as the splitting did not result in a decortication or separation of the fibers; and, resting this decision thereupon and confining it to an interpretation of that paragraph alone, we hold the merchandise represented by Exhibits 1 to 4 herein manufactures composed of straw within the language of said paragraph. The merchandise represented by Exhibit 5 falls likewise therein for dutiable purposes as a manufacture of chip. Protest 852160 covered by this appeal not having been supported by testimony before the board was properly overruled.

*Modified.*