64

BRONSTON BROS. & CO. (INC.) *v.* UNITED STATES (No. 3591)[1]

United States Court of Customs and Patent Appeals, April 17, 1933

*Curie, Lane & Wallace (Samuel Isenschmid* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*Thomas J. McKenna,* special attorney, of counsel), for the United States.

[Oral argument February 10, 1933, by Mr. Isenschmid and Mr. McKenna]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This suit involves the dutiable status of certain hats, made of straw braid manufactured from bleached split straw, which merchandise was imported through the port of New York while the Tariff Act of 1922 was in force.

The collector took duty at the rate of 60 per centum ad valorem, classifying the merchandise under that part of paragraph 1406 of said act which reads as follows:

PAR. 1406. Braids, plaits, * * * composed wholly or in chief value of straw, chip, grass, * * * suitable for making or ornamenting hats * * *

---

[1] T. D. 46391.

all other hats, composed wholly or in chief value of any of the foregoing materials, whether wholly or partly manufactured, not blocked or blocked, not trimmed or trimmed, if sewed, 60 per centum ad valorem. But the terms "grass" and "straw" shall be understood to mean these substances in their natural form and structure, and not the separated fiber thereof.

The classification of the collector was protested by the appellant, several different paragraphs being alternately claimed; the United States Customs Court overruled the protest, and the instant appeal to this court was taken.

The record contains a comprehensive stipulation of facts which is set forth in full in the elaborate opinion of the court below, T. D. 45619, and numerous exhibits and illustrative exhibits, showing what are called whole straws, split straws, straw braids, and finished straw hats, were presented and are before us.

It is deemed sufficient for the purposes of our opinion to state that the hats involved were made from braids of bleached straw—probably rice straw. The braids were formed by plaiting the straws, which before being plaited had been cut into uniform lengths, the joints or "knuckles" being cut out, and the lengths or tubular pieces being split into three parts, the width of the split parts varying somewhat according to the sizes or diameters of the original tubular lengths.

It is the splitting of the straws which creates the issue presented, it being the claim of the importer that the hats are excluded from paragraph 1406 by reason of the concluding sentence of that paragraph which reads:

But the terms "grass" and "straw" shall be understood to mean these substances in their natural form and structure, and not the separated fiber thereof.

It is insisted by the importer that the straws having been split into pieces, as described, they were no longer in their "natural form and structure" when made into the braids which in turn were made into the hats, and, before us, the insistence is made that the merchandise should be classified either as manufactures of straw, under paragraph 1439 of the Tariff Act of 1922, taking duty at 25 per centum ad valorem, or that, if excluded from 1439, by reason of being bleached, it should be classified as unenumerated manufactured articles, not specially provided for under paragraph 1459 of said act, with duty at 20 per centum ad valorem.

The pertinent portions of these respective paragraphs read:

PAR. 1439. Manufactures of * * * grass * * * straw * * * or of which these substances or any of them is the component material of chief value, not specially provided for, 25 per centum ad valorem; * * * The terms "grass" and "straw" shall be understood to mean these substances in their natural state and not the separated fibers thereof.

PAR. 1459. * * * there shall be levied * * * on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

It seems proper to say at this point that in paragraph 1439, *supra*, there appears a definition of the terms "grass" and "straw" which is, at least, akin to the definition of those terms as given in paragraph 1406, *supra*. The precise difference will be the subject of later comment in this opinion, but it may be here remarked that we are unable to see why if the articles are excluded from paragraph 1406, by reason of the definition of "straw" there given, they are not also excluded from paragraph 1439 by reason of the definition of the term therein contained, as well as by reason of the fact that the straws composing the braids are bleached. However that may be, we think the issue, upon this record and the brief of appellant, must be here confined to paragraphs 1406 and 1459, respectively.

The court below, after quoting various definitions of "form," declared, citing *Leaycraft & Co.* v. *United States*, 130 Fed. 106, that "natural form and structure, as used in paragraph 1406, means the form and structure in which nature produced the straws in question," and found that, while the "structure" of the round tubular straw was not "materially, if at all," affected by its being split into three pieces, the "form" was changed. The court also discussed the "separated fiber" phrase and concluded that the splitting of the straws into three pieces "is not a separation of the individual fibers thereof from each other, or from any other substances which may be contained therein."

On account of its finding as to the splitting of the straws causing a change in "their natural *form*" (italics ours) the court indicates that, were the question being for the first time presented, it would hold that the articles are excluded from paragraph 1406. Indeed, the opinion flatly declares:

We have no hesitancy in stating that, had this question been presented as an initial proposition, we would hold the straw of which the merchandise in question is composed, being split into three separate and distinct pieces, not to be in its natural form and structure, and that the merchandise was therefore excluded from the operation of paragraph 1406 for that reason.

But the court then proceeded to an examination of the legislative history of the language involved, as used in different tariff acts, in the light of a decision rendered December 19, 1899, by the United States General Appraisers (now the United States Customs Court) in the case of *Gage Bros.* v. *United States*, T. D. 21861, and concluded that the classification of the collector should stand, saying:

We do not wish to be understood as holding that the straw in question, being split into three separate and distinct pieces, is in its "natural form and structure," or that it is the "separated fiber thereof." We merely hold that it was the *intention* of Congress to include within paragraph 1406 the straws in question, which have been split into three pieces. (Italics quoted.)

The defining language which has occasioned this controversy seem to have appeared for the first time in paragraph 352 of the Tariff Law of 1894, and, according to the Government brief—

A review of the available works which embody the reports before Congress at the time of the enactment of the Tariff Act of 1894 fail[s] to cast any light upon the congressional reason for inserting the definition.

The brief, however, deduces certain supposed reasons for it, from a review of certain decisions of the United States General Appraisers (now the United States Customs Court) prior to the 1894 act, mentioning specifically T. D. 12223, T. D. 12354, T. D. 12355, and T. D. 12356.

In the Tariff Act of 1897 specific provision was made for the first time for straw hats, same being embodied in paragraph 409 of the act, which paragraph contained, as its concluding sentence, the exact language that now appears as the concluding sentence of paragraph 1406 of the Tariff Act of 1922, *supra*, here involved.

The *Gage Bros. & Co.* case, *supra*, arose under the 1897 act and the decision declared:

We find as a matter of fact, from an inspection of the official samples, that the goods in question are braids expressly designed and adapted for making or ornamenting hats, bonnets, or hoods. They are composed of dyed chip and fancifully plaited straw, which latter, although advanced from the natural state by being cleansed, split into narrow strips, and plaited, is "in its natural form and structure," within the intent and meaning of the tariff act, as contradistinguished from a fabric composed of the "separated fibers" or fine filament of the straw such as is used in spinning, weaving, etc., from which the pith and other nonfibrous constitutents have been removed.

After quoting the foregoing the court below adds:

In the enactment of all tariff acts subsequent to the rendition of the above decision in 1899, down to and including the act of 1922, Congress has employed the same statutory definition of grass and straw as it employed in the act there construed, and the courts have consistently followed the decision in the *Gage* case, *supra*.

One of the arguments of appellant before us is "that the *Gage* case, *supra*, misquoted and therefore misinterpreted the statutory definition of 'straw'," as given in the 1897 act, in that the opinion referred to "separated *fibers*," whereas the expression of the act was "separated *fiber*."

We are unable to see wherein this distinction should be held to constitute any difference as to the construction applicable in the *Gage* case, *supra*, and in this case, because, in our opinion, the splitting of the straws did not result in either separated *fiber* or separated *fibers*, within the meaning and intent of the language of the paragraphs. Appellant's hats are not made of braid plaited of separated straw fiber, nor from braid made of the separated fibers of straw. They are made of braids composed of straw which had been split before plaiting. We agree with the court below that the only change which is of importance to the issue presented is the change in form caused by the splitting.

Another argument of appellant is that the court below did not consider the *full* legislative history of the above-quoted statutory definition of "straw" subsequent to the act of 1897 under which the *Gage* case, *supra*, was decided.

Upon this phase of the matter it is pointed out that the definition of "straw," given in the "Manufactures, n. s. p. f.," paragraph (par. 409) of the 1897 act was changed in the 1913 (par. 368) tariff act, and that the 1913 act definition is the one which appears in paragraph 1439, *supra*, of the Tariff Act of 1922. The change was from "these substances in their natural form and structure and not the separated fiber thereof" to "these substances in their natural state and not the separated fibers thereof."

Here again we are unable to perceive in the distinctions any difference which affects the issue before us. The definition first appearing in the Tariff Act of 1894 and first applied in the paragraph for straw hats in the act of 1897 has not been changed in any respect whatsoever in any subsequent act. It continued in the same words in the acts of 1909, 1913, and 1922, respectively, and, incidentally it may be added, the same language is continued in the Tariff Act of 1930.

It seems reasonable to suppose that had Congress desired to change the classification of straw hats from that being consistently practiced following the decision in the *Gage* case, *supra*, it would have altered the straw-hat paragraph itself. We should not feel justified in holding that the alteration in the definition stated in the "Manufactures, n. s. p. f." paragraph, with no changes in the one where straw hats are *eo nomine* dealt with (however important that change may be as to cases different in their facts from the one before us), indicates any intent upon the part of Congress to have merchandise such as is here involved take any classification different from that which has so long been given it.

When the facts and issues presented in the cases of *United States* v. *International Forwarding Co.*, 8 Ct. Cust. Appls. 378, T. D. 37632, and *Isler & Guye* v. *United States*, 10 Ct. Cust. Appls. 74, T. D. 38339, both cited for certain purposes by appellant, are considered in their proper relation, we think they have no application to the issue now before us which might legitimately lead to a different conclusion than that reached by the court below and by us.

In view of the quite earnest declaration on the part of the court below indicating its disagreement with the holding of its predecessor tribunal in the *Gage Bros. & Co.* case, *supra*, we deem it proper to state that, for what seems to us to be perfectly reasonable considerations, our view upon the soundness of the earlier decision does not coincide with the present view of the Customs Court.

It may be remarked in the first place that the result wrought by the earlier decision is one entirely consistent with general tariff

policy, as that policy is well understood. The result which appellant here seeks would be inconsistent with such policy in that it would admit hats made of braid manufactured from split straws (other statutory elements being the same) at rates of duty less than those made from braids manufactured from whole straws, presumably a cruder raw material. While there are instances of such results such instances are rare and situations created by them are almost uniformly regarded as anomalous.

In the second place it seems apparent to us that no straw hat probably can practically be made from braids composed of straws which are *literally*, to quote from the trial court's opinion, "in the form and structure in which nature produced the straws." Certainly no hats are exhibited in this case which are so composed. Certain illustrative exhibits of hats made from whole straw braids, and of braids themselves, concerning whose proper classification under paragraph 1406 no suggestion of doubt is offered, are in this record. These straws obviously were not, as woven into the braids, in the form in which nature produced them. The knuckles of the joints have been entirely removed, for example. This has destroyed to this extent the form "which nature gave" them. They have, too, been changed from the tubular form in which they grew by being flattened, with resultant creases in their structure. This court is of the opinion that the initial decision in the *Gage Bros. & Co.* case, *supra*, was sound.

We think the collector's classification should be *sustained* upon both the construction of the paragraph and upon the judicial and legislative history recited.

The judgment of the Customs Court is *affirmed*.