BEFORE THE FIRST DIVISION, FEBRUARY 27, 1943

**No. 48060.**—Protests 88827–K, etc., of Ignaz Strauss & Co. (New York).

Opinion by WALKER, J.   The exhibits consisted of bags, doilies, and mats, of various kinds, some composed in part of colored sea grass and some not.   It appeared that the controversy is whether the terms "grass" and "straw" mean these substances in their natural state and not the separated fibers thereof.   Two witnesses testified, one for the plaintiff and one for the defendant. . The buyer of the plaintiff-corporation testified that he had been in China and had seen its manufacture; that it grew in various lengths and widths, and is gathered and made into bundles which are brought to home workers, who, if the article to be woven is to be of natural color, wet it and proceed to weave; and if the article is to be colored, "those particular strings" are dyed before it is woven; that in the course of weaving the pieces of sea grass, which are not of uniform width, are cut by the workers "partly with their fingernails and partly by knife"; that after weaving the article is bleached by exposing it to the sun for varying periods from a couple of days to a week and longer.   The witness for the defendant testified that his firm had imported articles similar to exhibit 1 and 'to one of the other exhibits, although not colored, and that he had been in China and seen such merchandise manufactured from sea grass.   His description of the process varied somewhat from that of the preceding witness in that, he said, after gathering the sea grass, which it is apparently undisputed, is green when growing, it is laid in the sun to dry out, during the course of which it is bleached by the action of the sun into a yellow and brown color "much like straw does, or grass into hay."   Both witnesses agreed that sea grass could not be manufactured into articles in the condition as taken from the water.   It was the court's opinion that the plaintiff failed to prove that the merchandise involved is composed in chief value of sea grass in other than its natural state, or in chief value of the separated fibers thereof, and that it would appear the placing of the sea grass in the sun, either before or after weaving, had for its primary purpose the drying thereof, and that the bleaching was incidental.   It is obvious that the grass would have to be dried, either before or after weaving, so that the natural state of the dried grass would be the so-called "bleached" state.   On the record presented the protests were overruled. *Isler & Guye* v. *United States* (10 Ct. Cust. Appls. 74, T. D. 38339) distinguished.

BEFORE THE SECOND DIVISION, FEBRUARY 27, 1943

**No. 48061.**—Protests 38065–K, etc., of A. D. Cohen Co., Inc. (New York).

Opinion by TILSON, J.   In accordance with stipulation of counsel and on the authority of *United States* v. *Armand Schwab* (30 C. C. P. A. 72, C. A. D. 218) the protests were sustained.