## (C. D. 1104)

### WASHINGTON STATE LIQUOR CONTROL BOARD v. UNITED STATES

United States Customs Court, Third Division

(Decided May 6, 1948)

*Smith Troy*, Attorney General of the State of Washington; *Joseph P. Lavin, John Anton Sterbick, Jr.*, and *Lucile Lomen*, Assistant Attorneys General (*George R. Tuttle* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil* and *Richard F. Weeks*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: This case involves an importation of bottled rum from Cuba which arrived in the United States at a port in Florida on December 31, 1943, and was transshipped under I. T. entry to the port of Seattle, Wash. At the latter port it was entered for consumption on February 8, 1944. Regular duty was assessed thereon at the rate of $2 per proof gallon under paragraph 802, as modified by the supplementary trade agreement with Cuba (T. D. 50050). No question is raised as to the correctness of that assessment. An internal revenue tax of $6 per wine gallon was also levied and paid, both payments taking place on February 8, 1944.

The rum involved, which was loaded on a freight car of the B. & O. Railroad, was taken from pier 14 at Seattle to Eyres Warehouse in that city about February 16, 1944. Said warehouse consisted of both bonded and free portions and the instant merchandise was placed in the free portion and never at any time was in the bonded area. The purpose of placing the goods in warehouse was to enable the importer to have strip stamps affixed to the bottles as required by section 2803 of the U. S. C., title 26 (Internal Revenue Code), and the Code of Federal Regulations, 1940 Supp. (Title 26, sections 191.17 and 191.46).

The goods remained in warehouse until May 27, 1944, at which time they were removed by the importer. In the interim the Revenue Act of 1943 had gone into effect, fixing the internal revenue tax at $9 per gallon. The effective date of that act was April 1, 1944. The collector in liquidation assessed the rum with internal revenue tax at the $9 per gallon rate.

It is claimed by the plaintiff herein that the goods were imported and entered for consumption, payment of duty and internal revenue tax was made at the time of entry, a consumption entry.permit was issued to the importer, the importation was at no time entered in bond under warehouse entry or withdrawn from bond under warehouse entry, and customs examination and appraisement were had, all of which took place prior to April 1, 1944, and therefore the goods were not subject to the tax under the Revenue Act of 1943.

We quote the pertinent provisions of the respective statutes and regulations as follows:

SECTION 2800. TAX—(a) RATE—(1) DISTILLED SPIRITS GENERALLY.

There shall be levied and collected on all distilled spirits in bond or produced in or imported into the United States an internal revenue tax at the rate of $6 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn from bond.

[Rate increased to $9. See section 1650, Supp. V.]

SECTION 2803. STAMPS FOR CONTAINERS OF DISTILLED SPIRITS—(a) REQUIREMENT.

No person shall transport, possess, buy, sell, or transfer any distilled spirits, unless the immediate container thereof has affixed thereto a stamp denoting the quantity of distilled spirits contained therein and evidencing payment of all internal-revenue taxes imposed on such spirits. * * *

SEC. 191.17. *Persons authorized to affix red strip stamps.* Red strip stamps shall be affixed to imported containers of distilled spirits as follows: (a) by the bottler or exporter in a foreign country, * * *; (b) under customs supervision, by the bottler in a foreign country, * * *; or (c) by the importer or owner in a customs bonded warehouse, * * *.

Sec. 191.46. *Conditions.* Distilled spirits in containers imported without having red strip stamps attached may not be released from customs custody until a stamp has been affixed to each container, under the supervision of a customs officer in a bonded warehouse. * * * At ports where there is no customs bonded warehouse, no distilled spirits imported in containers without stamps affixed shall be released until the stamps have been affixed to the containers under the supervision of a customs officer.

We must determine whether, under the circumstances of this case, the importation here involved was complete prior to the effective date of the Internal Revenue Act of 1943, i. e., were the goods "imported" within the meaning of section 2800 (a) (1), *supra*, as amended. The meanings to be given to the terms "import" and "importation" as used by Congress often differ, the variation in meanings depending

upon the context and the object to be attained by the use of the words. One line of cases holds that "importation" in its ordinary sense means bringing merchandise within the limits of the port with intent to unlade. See *United States* v. *Estate of Boshell*, 14 Ct. Cust. Appls. 273, T. D. 41884; also *Diana* v. *United States*, 12 Ct. Cust. Appls. 290, T. D. 40295; *Sterling Bronze Co.* v. *United States*, *idem* 338, T. D. 40487; *Porto Rico Brokerage Co.* v. *United States*, 23 C. C. P. A. (Customs) 16, T. D. 47672; *Procter & Gamble Mfg. Co.* v. *United States*, 19 C. C. P. A. (Customs) 415, T. D. 45578; *Headley Asphalt Division* v. *United States*, 24 C. C. P. A. (Customs) 427, T. D. 48873.

The other line of cases holds that "import" may mean the time when the goods are withdrawn from warehouse and enter the commerce of the country. *Casazza & Bro.* v. *United States*, 13 Ct. Cust. Appls. 627, T. D. 41481; *May Co.* v. *United States*, 12 Ct. Cust. Appls. 266, T. D. 40270. See also *Hartranft* v. *Oliver*, 125 U. S. 525; *United States* v. *Goodsell*, 84 Fed. 439; *Five Per Cent Cases*, 6 Ct. Cust. Appls. 291, T. D. 35508; *United States* v. *Cronkhite*, 9 Ct. Cust. Appls. 129, T. D. 37980; *Constance* v. *United States*, 11 Ct. Cust. Appls. 435, T. D. 39436.

In all of these cases the doctrine has been uniformly adhered to that so long as goods remain in the custody and control of the officers of the customs they are to be regarded as in customs custody so as to be affected by any new legislation in relation to the duties that the legislative body may see fit to adopt. In order to constitute such withdrawal from the custody of the customs and introduction into the body of commerce, payment of duties and due delivery and receipt by the importer of an unconditional permit of delivery were held necessary.

In the instant case the delivery permit on customs Form 7501-A in evidence contains the following notation:

I. R. bottle strip stamps submitted. Purchased on Reg. #119—To be affixed to bottles under Customs supervision at our Pier 14 Whse (bonded space) before release FEC Dpc.

From testimony produced at the hearing it appeared that the initials "FEC" were those of F. E. Christison, deputy collector.

A mere reading of the above permit discloses that it is conditioned upon the affixing of strip stamps "under Customs supervision" at pier 14 warehouse in the bonded space thereof. It further appears from the record that the required conditions were not complied with in this case, in that the strip stamps were not affixed to the goods here involved at the specified place, but said goods were transported to a warehouse in which the stamps were affixed, under customs supervision, while the goods were in the free area of said warehouse. No explanation is found in the record as to the reason for this disregard of the terms of the delivery permit. However, the failure to place the

.goods in the bonded area of the warehouse cannot operate to alter the requirement of the statute which provides that this internal revenue tax shall be levied on all imported spirits. The regulations above set forth, made under authority of the statute, contemplate that the stamps shall be affixed while the goods are in bond. (Section 191.17, *supra*.)

In the case of *Parfums Corday, Inc.* v. *United States*, 8 Cust. Ct.161, C. D. 597, the court used the following language:

A careful reading of the authorities cited indicates that physical withdrawal of the goods from warehouse or even presentation of the delivery permit to the storekeeper is not necessary to effect entrance of the goods into the commerce of the country, but that such entrance takes place when control over the goods passes to the importer and nothing remains to be done by the customs officials or employees except to honor the delivery permit and release the goods. * * *

In the instant case the customs officials were not free to release the goods until they had been stamped under customs supervision. Therefore, we cannot spell out a constructive withdrawal. Even though the permit may have been issued, it is the act of the storekeeper which releases the merchandise and terminates the custody of the goods so that a withdrawal takes place.

We find no merit in plaintiff's contention that inasmuch as a floor tax was paid on this merchandise, as required by the internal revenue law, that constitutes some evidence that the goods were not subject to the higher tax under the Revenue Act of 1943. We therefore do not discuss that point.

Upon the record we find that the delivery permit was conditioned upon the affixing of strip stamps to the bottles imported. Inasmuch as that operation was not completed until after the effective date of the Revenue Act of 1943, the goods are properly assessable at the rate of tax fixed by that act, as found by the collector, i. e., $9 per wine gallon.

For the foregoing reasons plaintiff's claims are overruled.

Judgment will be rendered for the defendant.