(C. D. 1387)

R. C. WILLIAMS & CO., INC. v. UNITED STATES

United States Customs Court, Third Division

(Decided January 22, 1952)

Barnes, Richardson & Colburn (James F. Donnelly, J. Bradley Colburn, and Edward N. Glad of counsel) for the plaintiff.

Charles J. Wagner, Acting Assistant Attorney General (William J. Vitale, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

JOHNSON, Judge: Canadian whisky contained in 1,750 cases was imported into the United States from Canada and landed at the port of Niagara Falls, N. Y. From there, by virtue of an immediate transportation entry, it was shipped to the port of New York and entered under bond for warehousing. No question is raised in the protest relative to the amount of duty assessed upon the whisky. The controversy relates solely to the assessment of internal revenue tax.

At the trial of this case it was orally stipulated between counsel for both parties as follows:

We propose to stipulate and agree with the Government as follows:

1. The merchandise involved herein consists of Harwood's blended Canadian whiskey, imported from Canada on October 21, 1946.

2. The merchandise arrived in the United States at the Port of Niagara Falls, New York, for transshipment to the Port of New York, and was entered for immediate transportation to the Port of New York under I. T. Entry Number 2005, of October 21, 1946. There were no exceptions to good order noted upon the manifest copy of I. T. Entry Number 2005 at Niagara Falls concerning the condition of the merchandise at the time of its arrival in the United States.

3. The shipment was invoiced and entered under New York Warehouse Entry Number 25748 of October 23, 1946 as 1750 cases of four-fifth-quart bottles each, each case containing 12 bottles, equivalent to 4200 United States gallons.

4. The Customs inspector discharging the shipment from the railway carrier at the Port of New York on October 25, 1946 noted upon the permit copy of warehouse entry 25748, the following exceptions to good order:

6 cases containing 11 full and 1 broken each;
1 case containing 10 full and 2 broken.

The said inspector of Customs also reported additional exceptions to good order found by the Customs storekeeper upon receipt of the merchandise in bonded warehouse, as follows:

1 case containing 9 full, 3 broken;
2 cases containing 11 full, 1 out, each.

5. Three cases of this merchandise were designated for public stores examination, and there were no exceptions to good order reported by the appraiser as to the contents of these 3 cases.

6. On December 16, 1946 plaintiff filed an application to repack 20 cases of this merchandise on Customs Form 7505, pursuant to the provisions of Section 562 of the Tariff Act of 1930, as amended, and such application was approved by the Collector of Customs on the same day.

7. Repacking of these 20 cases proceeded under Customs supervision in the Customs bonded warehouse, and the Customs storekeeper reported that the said 20 cases of whiskey were received for repacking in the following condition:

13 cases, each, 11 full, 1 broken;
2 cases each, 10 full; 2 broken;
2 cases each, 9 full, 3 broken;
3 cases each, 11 full, 1 out.

The Customs storekeeper totaled the foregoing, and reported 23 bottles broken and 3 out or missing.

8. Upon liquidation of the entry, on April 19, 1948, Internal Revenue taxes were assessed upon 4195.00 gallons of whiskey, allowance being made for 5

gallons of the invoiced and entered quantity. This 5-gallon allowance was computed upon the basis that there were a total of 23 broken bottles contained in the shipment and 2 bottles out or missing from the shipment.

9. No allowance of Internal Revenue tax was made for a third missing bottle reported by the Customs storekeeper on the permit to repack; and

It is further stipulated and agreed that all of the papers accompanying the protest and the memorandum of the Collector relative to the protest may be received in evidence subject to the approval of the court.

MR. VITALE: The Government so stipulates, your Honors please, on advice of the Government officials.

It is observed from the foregoing stipulation of fact that 20 cases of whisky designated to be repacked involved 3 cases, each of which contained 11 full bottles, 1 bottle being missing from each of the cases. At the time of entry of the whisky into the port of New York, the inspector discharging the shipment from the railway carrier noted that 2 of the cases contained 11 full bottles and that 1 bottle was missing from each case. Thus, at the time of repacking, another case of whisky apparently full at the time it was discharged from the carrier at the port of New York also had one bottle of whisky missing. The collector in liquidating the entry failed to make an allowance in the assessment of the internal revenue tax for such additional bottle found missing at the time the merchandise was presented for repacking. It is clear, therefore, that the bottle in question in the pending case was not missing when the container was entered for warehouse, but was missing from the container prior to withdrawal of the whisky.

Counsel for the plaintiff contends that the internal revenue tax on imported whisky is assessable only on the quantity actually withdrawn from bonded warehouse as shown by the final gauge, or regauge, and that the storekeeper's report constitutes such regauge of the shipment. It is argued on behalf of the plaintiff that the one missing bottle was no more a part of the quantity of the shipment imported or withdrawn from the bonded warehouse by the importer than were the other 23 broken bottles and 2 additional missing bottles, and that the collector, in determining the quantity subject to the imposition of internal revenue tax, erred in not making allowance also for this one missing bottle.

In support of such contention, counsel for the plaintiff relies upon the case of *Julius Wile Sons & Co.* v. *United States*, 32 Treas. Dec. 493, G. A. 8059, T. D. 37174; *Louis T. Snow & Co.* v. *United States*, 21 Cust. Ct. 13, C. D. 1118, and cases therein cited.

Counsel for the plaintiff also pointed out in regard to the missing bottle in question that it had never been withdrawn from warehouse and, although no such claim was made, if the bottle of whisky had been stolen from warehouse without the knowledge of the storekeeper, such abstraction was not a withdrawal within the meaning of the

statute, citing *Lorenzen* v. *United States*, 41 F. (2d) 369, affirmed in *Lorenzen* v. *United States*, 52 F. (2d) 106. It is also contended that the term "imported" as used in section 2800 (a) (1) of the Internal Revenue Code of 1943 would not apply to whisky imported into the United States and entered into a bonded warehouse until an unconditional delivery permit for withdrawal from such warehouse was delivered to the importer, citing *Washington State Liquor Control Board* v. *United States*, 20 Cust. Ct. 173, C. D. 1104.

In further support of plaintiff's theory that there had been no withdrawal of the missing bottle, it is argued that the collector cannot assume that the missing bottle had gone into consumption inasmuch as there is no report of the storekeeper that it was withdrawn, and for the further reason that the withdrawal of a single bottle out of a case is prohibited under the provisions of section 562 of the Tariff Act of 1930, except under special authorization of the Secretary of the Treasury, and there is no evidence that such authorization was granted.

Counsel for the Government contends that an internal revenue tax imposed upon imported liquors is a duty, and therefore the liquidation of the entry herein fixed the rate and amount of duty, including the internal revenue tax due on the imported whisky, according to the quantity reported by the gauger's return at the time it arrived in New York City, the port of destination, inasmuch as it has been consistently held that duty must be paid on the basis of the original gauge made at the time of entry and not upon the basis of the gauge made at the time of withdrawal from warehouse, citing *Walker* v. *United States*, 25 C. C. P. A. 189, T. D. 49293, affirmed on rehearing in 26 C. C. P. A. 121, C. A. D. 4.

Upon the premise of such contention, counsel for the Government argues that inasmuch as the report of the Customs storekeeper with respect to the 20 cases of whisky ordered to be repacked was not made until almost 2 months after the whisky was entered in warehouse, the return of the original gauge prevails, and, further, that in treating the tax as a duty, the only recourse left the importer would be to claim under the provisions of section 563, Tariff Act of 1930, prohibiting any abatement or allowance in duties for loss while merchandise is in the customs custody, except under circumstances such as the Secretary of the Treasury is authorized to grant relief. However, it is urged that such provision is inapplicable to the bottle of whisky in question as the statute provides that respecting amounts less than $25, the decision of the collector shall be final and conclusive upon all persons. Therefore, it is contended that the court is without "authority to make any abatement or allowance in duties imposed thereon." In that regard, it is also argued that the loss of the one bottle discovered at the time of manipulation does not change the

situation because the provisions of sections 562 and 563 must be read together and, therefore, the application of section 562 may not nullify the provisions of section 563, citing *United States* v. *Siegfried Lowenthal Co.*, 31 C. C. P. A. 19, C. A. D. 244.

Counsel for the Government further contends that if the internal revenue tax is to be treated purely as a tax and not a duty, the tax is presumed to have been properly imposed, and the burden rests upon the plaintiff to show that the missing bottle of whisky was exempt from taxation, and the plaintiff has failed to meet the burden of proof, citing *United States* v. *Reitmeyer et al.*, 11 F. (2d) 648; *McClure* v. *United States*, 48 Fed. Supp. 531.

Counsel for the Government admits that section 2800 (a) (1) of the Internal Revenue Code provides that the internal revenue tax applies only to such liquor as has been withdrawn from bond, counsel stating in his brief that—

\* \* \* Where there is no *withdrawal* of spirits no tax is levied or collected. This rule is set forth in section 191.5 of the Internal Revenue Regulations, as amended, as follows:

> Distilled spirits in customs bonded warehouse or imported into the United States are subject to an internal revenue tax, when withdrawn, at the rate of \* \* \*.

Under the foregoing rule, when distilled spirits are shown to be destroyed by breakage, evaporation, etc. while under bond, they cannot be withdrawn and hence the tax does not attach thereto. *Freeman et al.* v. *United States*, 157 Fed. 195; *Lucas* v. *Kentucky Distilleries & Warehouse Co.*, 70 Fed. (2d) 883. However, when distilled spirits are stolen or abstracted while in bonded warehouse, such theft or abstraction constitutes a *withdrawal* within the meaning of the statute. The liability for tax purposes is not necessarily dependent upon the withdrawal from bond by the importer. The courts have continuously adhered to that theory of law. [Citing *Hamilton* v. *Kentucky Distilleries & Warehouse Co.*, 288 Fed. 326, and *United States* v. *Witten*, 143 U. S. 76.] [Italics quoted.]

Counsel for the plaintiff in a reply brief points out that paragraph 813 of the Tariff Act of 1930 has been amended by Public Law 612, and such amendment would be meaningless if the Government's contention that the internal revenue tax assessed upon imported merchandise should be treated as a duty, and as to the contention that there is an inference that the whisky was withdrawn by theft or abstraction or otherwise than through the proper official channels, counsel for the plaintiff replies that the record is void of any proof of theft, and inasmuch as the Government failed to establish that there was a theft, no inference of theft can be had.

The provisions of the Internal Revenue Code, the Tariff Act of 1930, and regulations cited and discussed by the parties to this action provide, so far as pertinent, as follows:

Title 26, section 2800 (a) (1), United States Code, as amended by section 1650, title 26—

**§ 2800. Tax—(a) Rate—(1) Distilled spirits generally.**

There shall be levied and collected on all distilled spirits in bond or produced in or imported into the United States an internal revenue tax at the rate of $9 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn from bond.

\*        \*        \*        \*        \*        .    \*        \*

**(f) Collection of tax on imported distilled spirits.**

The internal revenue tax imposed by paragraphs (1) and (2) of subsection (a) upon distilled spirits imported into the United States shall, under regulations prescribed by the Commissioner, with the approval of the Secretary, be collected and deposited in the same manner as other internal revenue taxes, except that such collection and depositing shall be by the collector of customs instead of by the collector of internal revenue. Such tax shall be in addition to any customs duty imposed under the Tariff Act of 1930, 46 Stat. 590, or any subsequent Act.

\*        \*        \*        ·\*        \*        \*        \*

On August 27, 1935, the Congress passed an act entitled "Liquor Law Repeal and Enforcement Act" (Ch. 740, § 1, 49 Stat. 872). Section 16 thereof provides as follows:

If distilled spirits upon which the internal-revenue tax has not been paid are lost by theft, accidental fire, or other casualty while in possession of a common carrier * * *, or if lost by theft from a distillery or other bonded warehouse, and it shall be made to appear to the Commissioner that such losses did not occur as the result of negligence, connivance, collusion, or fraud on the part of the owner or person legally accountable for such distilled spirits, no tax shall be assessed or collected upon the distilled spirits so lost, nor shall any tax penalty be imposed or collected by reason of such loss, but the exemption from the tax and penalty shall only be allowed to the extent that the claimant is not indemnified against or recompensed for such loss. This provision shall apply to any claim for taxes or tax penalties that may have accrued since the passage of the National Prohibition Act or that may accrue hereafter. Nothing in this section shall be construed as in any manner limiting or restricting the provisions of Title III of the National Prohibition Act.

Section 191.5, Internal Revenue Regulations 21, as amended (26 Code of Federal Regulations, section 191.5, Cumulative Supplement), provides as follows:

* * * Distilled spirits in customs bonded warehouse or imported into the United States are subject to an internal revenue tax, when withdrawn, at the rate of * * *.

Section 191.11 of said regulations provides:

*Collection of internal revenue taxes on imported distilled spirits and wines.* Internal revenue taxes payable on imported distilled spirits, * * * and wines, when entered or withdrawn for consumption, are collected, accounted for, and deposited as internal revenue collections by collectors of customs in accordance with customs regulations.

Paragraph 813, Tariff Act of 1930, as amended by Public Law 612, approved June 8, 1948, provides as follows:

PAR. 813. Notwithstanding any other provision of this Act, the duties imposed on beverages in this schedule which are subject also to internal revenue taxes shall be imposed only on the quantities subject to such taxes.

Section 562, Tariff Act of 1930, as to manipulation in warehouse, provides as follows:

SEC. 562. MANIPULATION IN WAREHOUSE.

Unless by special authority of the Secretary of the Treasury, no merchandise shall be withdrawn from bonded warehouse in less quantity than an entire bale, cask, box, or other package; or, if in bulk, in the entire quantity imported or in a quantity not less than one ton weight. All merchandise so withdrawn shall be withdrawn in the original packages in which imported unless, upon the application of the importer, it appears to the collector that it is necessary to the safety or preservation of the merchandise to repack or transfer the same: *Provided,* That upon permission therefor being granted by the Secretary of the Treasury, and under customs supervision, at the expense of the proprietor, merchandise may be cleaned, sorted, repacked, or otherwise changed in condition, but not manufactured, in bonded warehouses established for that purpose and be withdrawn therefrom for exportation to a foreign country or for shipment to the Virgin Islands, American Samoa, or the island of Guam, without payment of the duties, or for consumption, upon payment of the duties accruing thereon, in its condition and quantity, and at its weight, at the time of withdrawal from warehouse, with such additions to or deductions from the final appraised value as may be necessary by reason of change in condition. * * *

Section 563, Tariff Act of 1930, granting allowance in duties under certain conditions, provides as follows:

SEC. 563. ALLOWANCE FOR LOSS—ABANDONMENT OF WAREHOUSE GOODS.

(a) ALLOWANCE.—In no case shall there by any abatement or allowance made in the duties for any injury, deterioration, loss, or damage sustained by any merchandise while remaining in customs custody, except that the Secretary of the Treasury is authorized, upon production of proof satisfactory to him of the loss or theft of any merchandise while in the appraiser's stores, or of the actual injury or destruction, in whole or in part, of any merchandise by accidental fire or other casualty, while in bonded warehouse, or in the appraiser's stores, or while in transportation under bond, or while in the custody of the officers of the customs, although not in bond, or while within the limits of any port of entry and before having been landed under the supervision of the officers of the customs, to abate or refund, as the case may be, the duties upon such merchandise, in whole or in part, and to pay any such refund out of any moneys in the Treasury not otherwise appropriated, and to cancel any warehouse bond or bonds, or enter satisfaction thereon in whole or in part, as the case may be, but no abatement or refund shall be made in respect of injury or destruction of any merchandise in bonded warehouse occurring after the expiration of three years * * * from the date of importation. The decision of the Secretary of the Treasury as to the abatement or refund of the duties on any such merchandise shall be final and conclusive upon all persons.

The Secretary of the Treasury is authorized to prescribe such regulations as he may deem necessary to carry out the provisions of this subdivision and he may by such regulations limit the time within which proof of loss, theft, injury, or destruction shall be submitted, and may provide for the abatement or refund of duties, as authorized herein, by collectors of customs in cases in which the amount of the abatement or refund claimed is less than $25 and in which the importer has agreed to abide by the decision of the collector. The decision of the collector in any such case shall be final and conclusive upon all persons.

Section 16.5 (d) of the Customs Regulations of 1943, relative to the collection of internal revenue tax, provides as follows:

(d) Internal-revenue taxes on alcoholic beverages imported in barrels, casks, or similar containers shall be collected only on the number of proof gallons (or wine gallons if below proof) and fractional parts thereof actually entered or withdrawn for consumption. The quantity determined on the basis of the original customs gauge shall be considered the quantity actually entered or withdrawn and no regauge shall be made for the purpose of assessing internal-revenue taxes unless the lapse of time or the condition of the containers prior to entry or withdrawal indicates that the quantity shown by such original gauge has been substantially reduced by evaporation or leakage, or unless prior to entry or withdrawal the person making the entry or withdrawal makes a written request for a regauge. If fewer than 90 days have elapsed since the date of the original gauge, the request shall include a statement of the reasons for believing that such original gauge does not correctly indicate the quantity to be withdrawn. * * *

Section 16.5 (e) of the Customs Regulations of 1943, relative to the regauge of distilled spirits and the collection of internal revenue tax, provides as follows:

(e) When imported distilled spirits upon which collectors of customs are required to collect internal-revenue taxes under the provisions of I. R. C. section 2800 (f) and section 24.11 of these regulations, or imported wines upon which collectors of customs are required by the said sections to collect such taxes, are regauged in accordance with paragraph (d) of this section in order that the internal-revenue taxes may be collected on the gallonage actually withdrawn from warehouse for consumption, as contemplated by I. R. C. sections 2800 (a) (1) and 3030 (a), the internal-revenue taxes shall be adjusted on the warehouse withdrawal according to the gauge at the time of withdrawal. A notation shall be made on the withdrawal that the adjustment has been made in accordance with the provisions of this paragraph. * * *

Section 19.11 (b) of the Customs Manual of 1943, relative to repacking of warehouse goods, provides as follows:

(b) When goods are repacked, the storekeeper or other officer designated to supervise the manipulation shall report on the back of the permit the marks and numbers of the original packages and the marks and numbers of the packages after repacking; and the storekeeper, weigher, or gauger shall report the weight or gauge of the merchandise after manipulation. * * *

The contention of Government counsel that the internal revenue tax is a duty, and therefore the tax in question is governed by the *Siegfried Lowenthal* case, *supra*, and the *Walker* case, *supra*, would be an ingenious solution of the problem, if the law could be so construed. The *Siegfried Lowenthal* case, *supra*, held that sections 562 and 563, *supra*, must be read together and may not be used to nullify each other. The *Walker* case, *supra*, held that customs duty is levied on the basis of the original gauge. However, those cases are not applicable to the pending case for the reason that, as paragraph 813, *supra*, now provides, the quantities of alcoholic beverages upon which duty is assessable shall be measured by the quantities upon which the internal revenue tax is assessed. If the law also intended to

provide that the tax assessed thereon shall be measured by the quantities the subject of duty or that restrictions are imposed by any of the tariff duty provisions, paragraph 813 would be meaningless in its application. It is the duty of the court to decline to read into an act that which the Congress, when fully advised, did not do. See *Lang et al.* v. *United States*, 10 Ct. Cust. Appls. 228, T. D. 38563. Suffice it to say that the courts refrain from so construing a statute that the express provisions therein will be rendered nugatory. It is a cardinal rule of construction that a difference in language must, when possible and consistent with the act, be accorded a difference in meaning. See *Isler & Guye* v. *United States*, 10 Ct. Cust. Appls. 74, T. D. 38339.

Counsel for the Government cites the *Reitmeyer* case, *supra*, as authority for its contention that the burden rests upon the plaintiff to establish that the missing bottle was exempt from taxation. That case was a suit in equity involving the payment of income tax. The Government attacked the adequacy of the proof with reference to the action of the directors of the corporation in fixing the salaries of its officers. The court, however, found that the defendants had shown by a fair preponderance of evidence that the salaries in question were reasonable and were entitled to be deducted by the corporation as expenses in its income tax return. Despite the fact that the collector of internal revenue had imposed income tax upon higher corporate earnings than returned by the defendants, the court accepted secondary evidence as being sufficient to establish that the collector was in error. The Government's bill of complaint was dismissed. That case certainly is no authority for a holding that the plaintiff herein should establish by affirmative evidence that the bottle of whisky in question was not stolen from the warehouse.

In the *McClure* case, *supra*, importations of distilled spirits were involved, upon which a tax was assessed because the spirits had been illegally imported. The assessment was made as the result of a charge of fraud. To import spirits, under the law then prevailing, was a criminal offense. The plaintiff had filed claims for refunds wherein he had alleged that he had not made the importations. Such refund claims were admitted in evidence without restriction, and the plaintiff claimed that such refund claims must be considered as evidence on the question of whether or not importations had been made. The court, however, failed to agree with the plaintiff that the allegations made in the refund claims were evidence of the facts recited, but held that they were merely *ex parte* affidavits made without opportunity for cross-examination, and as the plaintiff failed to offer any proof of non-importation, the court accepted as true the finding of the Commissioner of Internal Revenue that the liquors were imported. Therefore, it was held that the liquors were imported with intent to defraud the defendant of the revenue to which it was entitled, and that for a period

of more than 7 years, the plaintiff had failed to report the importations and the nonpayment of the tax thereon, and then, not until after assessment of the tax had been made by the Commissioner. In such circumstances, it was held that the only reasonable inference to be drawn was that fraud had been sufficiently shown to cause the collector to make the assessment. Clearly, the *McClure* case, *supra*, although recognizing the correctness of the imposition of the tax upon an illegal importation of liquor, has no application to the situation here before the court and cannot be accepted as authority for holding that the assessment and collection of the tax upon the bottle of whisky here in question must be presumed to have been properly imposed, unless the plaintiff establishes that the missing bottle was exempt from such taxation. It might be pointed out also that in the foregoing cited case the Government in a counter claim alleged that the Commissioner of Internal Revenue had also found that there was a diversion of the alcoholic spirits there in question to beverage purposes and that the internal revenue tax should have been assessed at $6.40 a gallon instead of $1.10. The court noted, however, that the Commissioner assessed the nondiversion tax rather than the tax on diversion and held that the Commissioner's finding of diversion was not sufficient proof of that fact. We are of the opinion that the Government, in order to establish that the bottle of liquor in question was stolen from warehouse, must establish such fact from direct evidence thereof rather than to rely upon a presumption.

The Government in an effort to establish that a theft from warehouse was a withdrawal within the meaning of the law, distinguished the *Freeman* case, *supra*, which held that a showing that the merchandise had not been withdrawn from warehouse on account of having been destroyed by fire while in a bonded warehouse was a sufficient answer to the Government's action to recover the taxes thereon, and the *Lucas* case, *supra*, holding that no tax liability accrued under the terms of the Internal Revenue Code then in effect until the alcohol was withdrawn, and whatever may have been the "inchoate right of the government to tax the original quantity of spirits in the tank, the tax did not mature until the assessment and collection could be made." In the latter case, the court succinctly stated that where the tax liability had not matured by the lapse of time before any withdrawal of spirits, the date of withdrawal and the circumstances under which withdrawn became material, but where the tax liability had matured, the date of withdrawal and the circumstances under which withdrawn were immaterial. Clearly, in the pending case, the tax liability did not mature until after the whisky had been repacked and the withdrawal effected. Therefore, the *Lucas* case, *supra*, is clearly an authority for the proposition that the

tax is applied only to the withdrawn portions of whisky where the tax liability had not matured. The matter here before the court comes within the class of merchandise where the tax liability had not matured at the time the absence of the bottle from the case was discovered.

The following cases relied upon by the Government are not in point. In the *Hamilton* case, *supra*, the issue involved the removal from bonded warehouse of 14 barrels of whisky by a number of persons, among whom was a deputy collector of internal revenue. The Commissioner of Internal Revenue assessed a tax upon such stolen whisky of $6.40 per gallon. A claim was filed against the Commissioner for refund of such taxes. Later, a suit was brought in the District Court. The demurrer to the company's petition was overruled and judgment was entered in full amount for the plaintiff with interest and costs. Upon appeal to the Circuit Court of Appeals, the questions presented were whether the company was liable to pay the tax and what tax per gallon should have been assessed. It appears that the language of the act had been changed in that the word "withdraw" had been substituted for the word "removed." The court held that to withdraw meant to remove and there was nothing in the statute to indicate that Congress intended to use the word "withdrawn" in a limited or technical sense. The court in that case pointed out that if Congress had intended to exempt such stolen spirits so removed from warehouse from the payment of the tax, there would have been no necessity of passing the later act of November 23, 1921, providing that if distilled spirits are lost by theft from a distillery or other bonded warehouse, no tax "shall be assessed or collected upon the distilled spirits so lost." But inasmuch as the act was passed after the occurrence of the theft from the distillery or warehouse, there at issue before the court, and that several months had elapsed since the judgment of the lower court was entered, it was not effective in that case. The court there held, however, that the distiller liable for the tax was in no wise responsible for the purposes for which the whisky was stolen and, therefore, his tax liability was reduced to correspond with an assessment of $2.20 per gallon, as "no presumption obtains as against the distiller that this whisky was stolen for beverage purposes."

In the Liquor Law Repeal and Enforcement Act, *supra*, the act passed November 23, 1921, referred to in the *Hamilton* case, was reenacted in section 16, *supra*, as a part thereof. Therefore, the *Hamilton* case, *supra*, is not an authority for holding that a bottle of whisky missing in the warehouse has either been withdrawn by theft or otherwise, or is taxable.

In the *Witten* case, *supra*, decided by the Supreme Court, the

whisky had been in warehouse beyond the period of 3 years from the date of entry, as allowed by law, without the tax being paid, and was thereafter stolen. The Supreme Court held that by the failure of the defendants to pay the taxes on the spirits within 3 years from the date of their entry, the bond was forfeited, and the stealing of such spirits from the warehouse through negligence of the revenue officers afforded no defense, either to the principal or to the sureties on the bond for the reason that the deposit of the spirits in the bonded portion of the distiller's own warehouse was solely for the distiller's benefit and to enable him to give bond for the payment of the tax rather than paying it. No such situation arises in the case pending before this court.

We are unable to find that any of the cases cited sustain the position taken by the Government in this case. On the other hand, this court has held that an internal revenue tax under the law is to be levied upon the quantities of alcoholic beverages withdrawn from warehouse. In the *Wile* case, *supra*, the court held that bottles came within the term "cask or package" and also that as the Secretary of the Treasury had seen fit to excuse the gauger from performing the duties to which he had been assigned by the statute, upon which the right of the importer to receive an allowance in duties depended, the court was of the opinion that the discharging inspector performed the duties of the gauger, and his report to the collector fulfilled the requirement of the statute. The court stated that neither the collector nor the Treasury Department could defeat the importer's right to allowance by refusing to determine the gauge.

In the case of *Maui Dry Goods & Grocery Co., Ltd.* v. *United States*, 24 Cust. Ct. 297, C. D. 1251, the merchandise consisted of alcoholic beverages which had landed in Sumas and were transshipped to San Francisco on an immediate transportation entry. No gauging of the goods was undertaken until they had arrived at the San Francisco warehouse and an application had been made and granted the importer to repack the goods. The discharging inspector at the port of San Francisco made no detailed inspection of the goods such as noting the missing and broken bottles. In liquidating the entry, the collector made no allowance in duties for the broken and missing bottles. The importer protested such liquidation. This court sustained the protest and directed the collector to reliquidate the entry granting the allowances in duty claimed. The collector, however, refused to follow the mandate of the court upon the grounds that the affidavit, required of the importer to be filed within 15 days after delivery of the merchandise, was untimely, and insisted that the running of the time of the statute commenced with the discharging inspector's report rather than the report of the storekeeper-gauger. The importer

filed a protest against such reliquidation. The court found that the discharging inspector had failed to make a detailed inspection of the goods upon discharge from the vessel and had not included in his report any of the broken or missing bottles. When the beverages arrived at the warehouse, an application by the importer was made and granted to repack the cases. The storekeeper-gauger reported the broken and missing bottles at the time of repacking and within the time prescribed by the statute the importer filed with the collector a verification of such shortage. This court sustained the protest on authority of *United States* v. *Somerset Importers, Ltd.*, 33 C. C. P. A. 138, C. A. D. 328, involving exactly the same situation and action of the collector, holding as illegal the collector's action in refusing to grant allowance for breakage.

In the case of *Louis T. Snow & Co.* v. *United States, supra,* the merchandise consisted of alcoholic beverages which had been entered into a bonded warehouse, and which were repacked under the provisions of paragraph 562, *supra.* Certain losses were then discovered and reported to the collector by the storekeeper-gauger. The collector refused to make an allowance in the duties covering such loss and under the provisions of the statute prevailing at that time this court sustained the action of the collector. However, the collector also refused to make any allowance in the internal revenue tax due upon such beverages, which, naturally, were not withdrawn from warehouse. The court, on authority of the cases of *Paul Gelpi & Sons, Inc.* v. *United States,* 4 Cust. Ct. 373, Abstract 43072, and *Fritz* v. *United States,* 73 Treas. Dec. 1045, T. D. 49637, held that the collector had acted contrary to the provisions of the United States Code (section 1150 (a) (1)) in refusing to grant an allowance for the beverages not withdrawn from warehouse and the importer's claim that internal revenue taxes were illegally exacted upon all quantities except such as were withdrawn from warehouse was sustained.

We are unable to find that any of the cases cited by the Government sustain the position taken by the collector in this case. Clearly, the collector erroneously interpreted the provisions of the law and regulations, *supra,* in collecting internal revenue tax upon the bottle of whisky found missing in the report of the storekeeper-gauger. In view of the foregoing authorities, it is clear that the storekeeper-gauger's report constitutes a regauge of the merchandise prior to withdrawal and that the internal revenue tax should not have been levied upon the one bottle of alcoholic beverages in question.

Judgment will therefore be entered in favor of the plaintiff directing the collector to reliquidate the entry and refund the internal revenue tax collected upon the one bottle of whisky not withdrawn from warehouse.