UNITED STATES *v.* R. C. WILLIAMS & CO., INC. (No. 4732) [2]

---

[1] *Land* v. *Dollar*, 341 U. S. 737, 750.
[2] C. A. D. 508.

United States Court of Customs and Patent Appeals, January 14, 1953

*Charles J. Wagner*, Acting Assistant Attorney General (*Richard F. Weeks* and *William J. Vitale*, special attorneys, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*J. Bradley Colburn* and *James F. Donnelly of* counsel) for appellee.

[Oral argument December 11, 1952, by Mr. Weeks and Mr. Colburn]

Before GARRETT, Chief Judge, and O'CONNELL, WORLEY, COLE, and JACKSON (retired), Associate Judges

COLE, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, pursuant to its decision, C. D. 1387, which held that the Collector of Customs at the port of New York erroneously interpreted the provisions of the law and regulations in collecting internal revenue tax upon one bottle of whiskey found missing by the customs storekeeper prior to the repacking of twenty cases of said whiskey while in a bonded warehouse.

The whiskey was imported by appellee from Canada, the shipment arriving at the port of New York, where it was entered for warehousing. While actually but one bottle is involved in this litigation, counsel stated it is a test case.

The case was submitted upon an agreed statement of facts which discloses that at the time of the arrival at the port of Niagara Falls, New York, of the shipment of whiskey (1750 cases), which was Harwood's blended Canadian brand, no inspection thereof was made; that a transportation entry was made to the port of New York, where upon arrival the discharging customs inspector reported that seven cases contained eight broken bottles; that the customs storekeeper reported, upon receipt of the whiskey in the customs bonded warehouse, that in addition to the seven cases containing eight broken bottles previously reported, three additional cases contained three more broken bottles and that two bottles were missing; that later,

the appellee filed an application to repack twenty cases of the whiskey pursuant to the provisions of section 562 of the Tariff Act of 1930 (19 U. S. C. sec. 1562) as amended, which application was approved; that the customs storekeeper reported that the twenty cases covered by the permit to repack showed a total of twenty-three broken bottles and three out or missing; and that thereafter when the repacking operation had been completed, the customs storekeeper reported that the twenty cases had been repacked as follows:

    17 cases full;
    1 case 10 full bottles—2 out;
    1 case 11 necks—1 out;
    1 case 12 necks (corks intact).

The total thereof is twenty-three bottles broken and three missing after repacking. The invoiced and entered quantity of whiskey, amounting to 4200 U. S. gallons, was used by the Collector of Customs in liquidating the entry and an allowance of internal revenue taxes for five gallons was made, which five gallon allowance was computed to cover the reported twenty-three broken bottles, but only two of the missing bottles; that final withdrawal of the whiskey was made according to the entry record and was liquidated in April, 1948, approximately eighteen months after its arrival in the warehouse.

The sole issue is whether the internal revenue tax computed by the collector on the one missing bottle of whiskey—his theory being that the said tax was computable upon the total amount of liquor imported according to the invoice—should stand, or whether, as appellee contends, it should be relieved from any tax on the said one additional missing bottle at the time of withdrawal from the bonded warehouse. Stated another way, there was one additional bottle of whiskey missing upon inspection at the time of withdrawal from the amount admittedly received by the storekeeper at the time the shipment reached the warehouse, about eighteen months prior thereto, and the Government contends therefore that the internal revenue tax accrues thereon, just as though the missing bottle were actually present at the time of the withdrawal referred to, unless the appellee, having the burden of proving what happened to the same, did so by competent proof. Stated still another way, but meaning the same, it is the contention of the Government that the internal revenue tax referred to attaches at the time of importation and what the regauge of the liquor disclosed at the time of withdrawal from the warehouse makes no difference, invoking the provisions of section 2800 (a) (1) of the Internal Revenue Code (26 U. S. C. 2800 (a) (1)) as amended, and section 191.5 of the Internal Revenue Regulations, as amended.

The tax in question attached at the time of importation. There is no doubt about that. The contrary was persistently urged by the Government as late as the case of *United States* v. *Westco Liquor*

*Products Co.*, 38 C. C. P. A. (Customs) 101, decided February 6, 1951, wherein this court discussed the former policy that the tax should be levied, collected and paid when the liquor in question was sold or removed for consumption or sale, and held clearly and unequivocally against the Government's contention.

The court below set forth in its opinion the only remaining issue in a clear and accurate manner. We use at this point considerable of the same, reading as follows:

Counsel for the plaintiff also pointed out in regard to the missing bottle in question that it had never been withdrawn from warehouse and, although no such claim was made, if the bottle of whisky had been stolen from warehouse without the knowledge of the storekeeper, such abstraction was not a withdrawal within the meaning of the statute, citing *Lorenzen* v. *United States*, 41 F. (2d) 369, affirmed in *Lorenzen* v. *United States*, 52 F. (2d) 106. It is also contended that the term "imported" as used in section 2800 (a) (1) of the Internal Revenue Code of 1943 would not apply to whisky imported into the United States, and entered into a bonded warehouse until an unconditional delivery permit for withdrawal from such warehouse was delivered to the importer, citing *Washington State Liquor Control Board* v. *United States*, 20 Cust. Ct. 173, C. D. 1104.

In further support of plaintiff's theory that there had been no withdrawal of the missing bottle, it is argued that the collector cannot assume that the missing bottle had gone into consumption inasmuch as there is no report of the storekeeper that it was withdrawn, and for the further reason that the withdrawal of a single bottle out of a case is prohibited under the provisions of section 562 of the Tariff Act of 1930, except under special authorization of the Secretary of the Treasury, and there is no evidence that such authorization was granted.

Counsel for the Government contends that on internal revenue tax imposed upon imported liquors is a duty and therefore the liquidation of the entry herein fixed the rate and amount of duty, including the internal revenue tax due on the imported whisky, according to the quantity reported by the gauger's return at the time it arrived in New York City, the port of destination, inasmuch as it has been consistently held that duty must be paid on the basis of the original gauge made at the time of entry and not upon the basis of the gauge made at the time of withdrawal from warehouse, citing *Walker* v. *United States*, 25 C. C. P. A. 189, T. D. 49293, affirmed on rehearing in 26 C. C. P. A. 121, C. A. D. 4.

Upon the premise of such contention, counsel for the Government argues that inasmuch as the report of the Customs storekeeper with respect to the 20 cases of whisky ordered to be repacked was not made until almost 2 months after the whisky was entered in warehouse, the return of the original gauge prevails, and, further, that in treating the tax as a duty, the only recourse left the importer would be to claim under the provisions of section 563, Tariff Act of 1930, prohibiting any abatement or allowance in duties for loss while merchandise is in the customs custody, except under circumstances such as the Secretary of the Treasury is authorized to grant relief. However, it is urged that such provision is inapplicable to the bottle of whisky in question as the statute provides that respecting amounts less than $25, the decision of the collector shall be final and conclusive upon all persons. Therefore, it is contended that the court is without "authority to make any abatement or allowance in duties imposed thereon." In that regard, it is also argued that the loss of the one bottle discovered at the time of manipulation does not change the situation because the provisions of section 562 and 563 must be read together, and therefore the application of section 562 may not nullify the provisions of section 563, citing *United States* v. *Siegfried Lowenthal Co.*, 31 C. C. P. A. 19, C. A. D. 244.

Counsel for the Government further contends that if the internal revenue tax is to be treated purely as a tax and not a duty, the tax is presumed to have been properly imposed, and the burden rests upon the plaintiff to show that the missing bottle of whisky was exempt from taxation and the plaintiff has failed to meet the burden of proof citing *United States* v. *Reitmeyer et al.*, 11 F. (2d) 648; *McClure* v. *United States,* 48 Fed. Supp. 531.

Title 26, section 2800 (a) (1), United States Code, as amended by section 1650, referred to by the Customs Court, imposed internal revenue tax upon distilled spirits when imported into the United States, and provides that such tax is to be paid when the merchandise is "withdrawn from bond." The tax in this case computed thereunder covers the missing bottle because it was there upon delivery of the container to which it was assigned in the warehouse but not there when repacking of a designated quantity including the case originally containing the missing bottle was conducted under customs supervision in the customs bonded warehouse, pursuant to authority under the provisions of section 562 of the Tariff Act or 1930, supra, as amended, which was invoked by the appellee and approved by the Collector of Customs.

There can be no dispute of the fact that when a tax such as here involved is imposed, it is presumed to have been properly applied, and the burden rests upon the party attacking the same to show the tax to be erroneous. That means, as we interpret the law, to require a proper tax, i. e., something tangible in existence at the time on which such tax is computed as the liquor in this case available to be withdrawn from warehouse.

Government counsel argue in their brief that if it was clear to the trial court, as it should be, that the bottle of whiskey in question was not missing when the container was entered in warehouse, but was missing from the container prior to withdrawal of the whiskey, then it surely ought not require direct proof of theft, and that while there is no direct proof of theft in the case, the agreed and admitted facts, which cannot now be denied, are such as to lead to no other conclusion. Counsel further argue that the fact that the bottle of whiskey was imported and placed in bonded warehouse but was later found to be missing can lead to but one inference and that is that it was withdrawn by theft, abstraction, or otherwise than through proper official channels. With this statement, we cannot agree.

There is no authority under circumstances similar to those admitted to exist in this case which affords the Government the right to presume that the bottle of whiskey, admittedly missing, was stolen, and that the burden of proving to the contrary is on the importer. The law properly provides for the allowance in cases of loss or abandonment of warehouse goods such as those dealt with in this case. For in-

stance, section 563 of the Tariff Act of 1930, (19 U. S. C. sec. 1563 (a)) under the title, "Allowance," states:

* * upon production of proof satisfactory to him (Secretary of the Treasury) of the loss or theft of any merchandise while in the appraiser's stores, or of the actual injury or destruction, in whole or in part, of any merchandise by accidental fire or other casualty, while in bonded warehouse, or in the appraiser's stores, or while in transportation under bond, or while in the custody of the officers of the customs, although not in bond, or while within the limits of any port of entry and before having been landed under the supervision of the officers of the customs, to abate or refund, as the case may be, the duties upon such merchandise, in whole or in part, * * .

This is as it should be, meaning of course that the Government accepts definite responsibility for its custodianship and control of goods belonging to importers and that liability for improper discharge of that responsibility is appropriately spelled out in the law.

Section 562 of the Tariff Act of 1930, supra, entitled "Manipulation in Warehouse," provides:

Unless by special authority of the Secretary of the Treasury, no merchandise shall be withdrawn from bonded warehouse in less quantity than an entire bale, cask, box, or other package; or, if in bulk, in the entire quantity imported or in a quantity not less than one ton weight. All merchandise so withdrawn shall be withdrawn in the original packages in which imported unless, upon the application of the importer, it appears to the collector that it is necessary to the safety or preservation of the merchandise to repack or transfer the same: *Provided*, That upon permission therefor being granted by the Secretary of the Treasury, and under customs supervision, at the expense of the proprietor, merchandise may be cleaned, sorted, repacked, or otherwise changed in condition, but not manufactured, in bonded warehouses established for that purpose and be withdrawn therefrom for exportation to a foreign country or for shipment to the Virgin Islands, American Samoa, or the island of Guam, without payment of the duties, or for consumption, upon payment of the duties accruing thereon, in its condition and quantity, and at its weight, at the time of withdrawal from warehouse, with such additions to or deductions from the final appraised value as may be necessary by reason of change in condition. * *

Section 16.5 (d) and 16.5 (e) of the Customs Regulations of 1943, because of their importance and applicability to the situation herein discussed, are likewise set forth:

(d) Internal-revenue taxes on alcoholic beverages imported in barrels, casks, or similar containers shall be collected only on the number of proof gallons (or wine gallons if below proof) and fractional parts thereof actually entered or withdrawn for consumption. The quantity determined on the basis of the original customs gauge shall be considered the quantity actually entered or withdrawn and no regauge shall be made for the purpose of assessing internal-revenue taxes unless the lapse of time or the conditions of the containers prior to entry or withdrawal indicates that the quantity shown by such original gauge has been substantially reduced by evaporation or leakage, or unless prior to entry or withdrawal the person making the entry or withdrawal makes a written request for a regauge. If fewer than 90 days have elapsed since the date of the original gauge, the request

shall include a statement of the reasons for believing that such original gauge does not correctly indicate the quantity to be withdrawn. * * *

(e) When imported distilled spirits upon which collectors of customs are required to collect internal-revenue taxes under the provisions of I. R. C. section 2800 (f) and section 24.11 of these regulations, or imported wines upon which collectors of customs are required by the said sections to collect such taxes, are regauged in accordance with paragraph (d) of this section in order that the internal-revenue taxes may be collected on the gallonage actually withdrawn from warehouse for consumption, as contemplated by I. R. C. sections 2800 (a) (1) and 3030 (a), the internal-revenue taxes shall be adjusted on the warehouse withdrawal according to the gauge at the time of withdrawal. A notation shall be made on the withdrawal that the adjustment has been made in accordance with the provisions of this paragraph. * * *

We regard the storekeeper-gauger's report showing the missing bottle as constituting a regauge of the merchandise prior to withdrawal and that the internal revenue tax should not have been levied thereon. Such reasoning is abundantly supported by an interesting development in Congress during the period in which the whiskey in question was presumably in the bonded warehouse.

Public Law 612 passed Congress on June 8, 1948. (Ch. 425, sec. 1, 62 Stat. 344). It amended paragraph 813 of the Tariff Act of 1930 (19 U. S. C. sec. 1001, par. 813) and therein radically revised its policy in respect to the assessment of duties on imported distilled spirits and made such changed policy retroactive on all merchandise in respect to which liquidation of the entry or decision of the collector had not become final by reason of section 514 of the Tariff Act of 1930 (19 U. S. C. 514).

The entry in this case was liquidated April 19, 1948 and timely protest filed thereafter on June 14, 1948, all of which seems to support the statement by appellee's counsel that the liquidation of the entry was not final by operation of law and that the provisions of Public Law 612 applied thereto. It seems apparent that Congress by adopting Public Law 612 intended that the internal revenue tax, as well as duties, should be assessed and collected only on the quantity actually delivered to the importer.

Reports of the Ways and Means Committee of the House of Representatives and the Committee on Finance of the Senate, during the consideration of the legislation in question, contain the following identical language.

Enactment of the bill would eliminate the discrimination against liquors as compared with the procedures followed in determining the dutiable quantities of other commodities, in that it would permit allowance for losses occurring while the liquor was in transit to the United States. *In addition, it would permit allowance for losses occurring after importation but before the goods had been released from bond for consumption.*

The following excerpt is taken from the report of the Treasury Department:

The Treasury Department recommends the enactment of such a bill as it would relieve the Bureau of Customs of the present administrative difficulties which result from the assessment of duties on imported liquors on a basis differing from that it is required to use by virtue of section 2800 (a) (1) of the Internal Revenue Code in assessing internal-revenue taxes on such liquors. Broadly speaking, paragraph 813 of the tariff act requires that duties be assessed on the quantity of liquor shipped from the foreign country whereas *under section 2800 (a) (1) internal-revenue taxes are assessed on the quantity actually delivered to the importer.* This results in the serious administrative difficulties attendant upon a multiplicity of gagings and redeterminations.[1]   (Italics ours)

Following the passage of the foregoing act, the Secretary of the Treasury promulgated new regulations governing the determination of duties and tax on distilled spirits. It is significant that those regulations made clear that the duty and tax were to be assessed and collected only on the quantity established to be entered for consumption or withdrawal from warehouse for consumption. T. D. 51944; Customs Regulations of 1943, sections 16.5 (a) and (d).

We deem it unnecessary to discuss this case further. It is manifestly certain that the bottle of whiskey in question was not withdrawn for consumption and any tax thereon was illegally imposed.

For the reasons herein stated, the judgment of the United States Customs Court is *affirmed.*

JACKSON, J., retired, recalled to participate herein in place of JOHNSON, J.

---

[1] Report No. 1919, Committee on Ways and Means, 80th Congress, 2d Session; Senate Report No. 1421, Committee on Finance, 80th Congress, 2d Session.

