### LAMB et al. v. ROBERTSON, Collector.

*(Circuit Court, S. D. New York.    April 4, 1889.)*

**1. CUSTOMS DUTIES—CLASSIFICATION—MANUFACTURES OF JUTE.**
Certain manufactures of jute, less than 40 inches in width, sized, and having a patent selvedge, found by the jury to be "paddings" or "canvas," and not "burlaps," as known in the trade and commerce of this country at and prior to March 3, 1883.

**2. SAME.**
The terms "burlaps" and "paddings," as used in Schedule J of the tariff act of March 3, 1883, are commercial terms, and to be construed accordingly.

The plaintiffs, the firm of Lamb & Griesbach, in 1884 imported into the port of New York certain manufactures of jute, varying in width from 18 to 24 inches, which they claimed to be "burlaps," dutiable at 30 per cent. *ad valorem* under Schedule J of the tariff act of March 3, 1883, (T. I. 338,) but which the defendant collector assessed at 35 per cent. *ad valorem* under the same schedule, (T. I. 334) as "canvas, paddings, * * * or other manufactures of flax, jute, or hemp, or of which flax, jute, or hemp shall be the component material of chief value, not specially enumerated or provided for." The plaintiffs' evidence tended to show that the merchandise in suit was known as "burlaps" in trade and

commerce at the time of the passage of the tariff act of 1883, and the term "paddings" referred to a class of goods manufactured of jute and flax, or of jute and cotton, and not of jute exclusively. *Per contra*, a number of domestic manufacturers and wholesale clothing dealers testified on behalf of the defendant that the terms "paddings" and "canvas" referred to articles sometimes manufactured wholly of jute, (as were the articles in suit,) and sometimes partly of jute and other materials; that there was a difference between the manufacture of "paddings" and of "burlaps," the former being more closely woven, of a finer grade of jute, and with a patent selvedge, which burlaps did not have; that the standard width of burlaps, as known in trade and commerce, was 40 inches, and the weight of the goods in trade always had reference to the weight of the 40-inch wide burlaps, and to no other width; that paddings were also sized, in order to make them stiff, and differed, in this respect, from the ordinary burlap of commerce; that the narrow goods of this character (less than 40 inches wide) were sometimes called "paddings," and sometimes called "military" or "naval" canvas, and were not, prior to March 3, 1883, known as "burlaps" in the commerce of this country.

*Stephen G. Clarke, Edwin B. Smith,* and *Charles Curie,* for plaintiffs.

*Stephen A. Walker,* U. S. Atty., and *Henry C. Platt,* Asst. U. S. Atty., for defendant.

LACOMBE, J., (*charging jury.*) The question here is simply the determination of the commercial meaning of two words. Before you are samples of the goods which the plaintiffs actually imported, and upon which duty was exacted, and you are to determine by what name such goods were known in trade and commerce in this country when congress legislated with regard to them. The plaintiffs say they were "burlaps," the defendant says they were "canvas," or "paddings." The term "burlaps" and the term "paddings" are found in the tariff act in force when these goods were imported, as in fact they were in the earlier revision of the statutes. They are plainly enough commercial terms; and, in general, unless a contrary rule of interpretation is manifest, when tariff acts use commercial terms of this character, they use them in the meaning which the importers and large dealers in this country gave to the terms at the time of the passage of the act in which they are found; and the commercial meaning of the terms as generally understood by the importers and large dealers in the article in this country at the time when the act was passed is the meaning of the term as used in the tariff acts. Instructed by the evidence in this case, it will be for you to determine whether these particular articles were, at the time when congress legislated with regard to them, known in trade and commerce in this country as "burlaps" or as "paddings." In weighing the evidence there are certain matters which you should take into consideration: *First,* you will understand that the trade which by its usage settles the commercial names of goods, is the trade which is carried on between those who buy and sell at wholesale, where both the buyer and the seller are engaged in the traffic in those goods as the regular business of their lives. It is not the trade

where an individual buys for his own personal consumption, but the trade between the large dealers in and importers of the articles. *Second,* in this particular case the use to which the articles are put is wholly immaterial, and need not be taken into consideration by you at all. And similarly the adaptability of the articles to use need not be considered by you. It is a question wholly of trade names. The use, therefore, to which the article is put is immaterial. The name abroad is also of no materiality whatever. It is the business of this country with which we are concerned. Also the name stamped upon these goods, or others like them, at any time is immaterial. The only question here is this: What was the commercial name of these articles when congress passed this tariff act? If the committee of congress, having these articles before them at the time, had turned to the trade of this country and said: "Gentlemen, what name must be used to include these articles in our tariff act," what would have been the answer given them? If, from the evidence, you are satisfied that goods like these were known in trade as "burlaps," then your verdict must be for the plaintiffs. If, on the contrary, you are satisfied that they were at that time not so known, but were known as "canvas," or "paddings," then your verdict must be for the defendant.