RICE MILLERS' ASSOCIATION, AMERICAN MANUFACTURERS *v.* UNITED STATES AND OBERLE (INC.) (No. 2956) [1]

T. D. 42560.

United States Court of Customs Appeals, January 23, 1928

*A. A. Moreno* for appellant.
*Irving Washburn* for Oberle (Inc.).

[Oral argument December 14, 1927, by Mr. Moreno]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

Rice consigned to William J. Oberle (Inc.), the Levy Rice Milling Co., and John D. Russ was classified by the collector of customs at the port of New Orleans as *broken rice*, and assessed for duty at one-half of 1 cent per pound under that part of paragraph 727 of the Tariff Act of 1922 which reads as follows:

727. * * * broken rice and rice meal * * * one-half of 1 cent per pound.

The Rice Millers' Association, an association of American manufacturers, protested against the action of the collector on the ground that the importation was not broken rice and should have been assessed for duty as rice at 2 cents per pound. The United States Customs Court overruled the protest and the Rice Millers' Association appealed.

It appears from the record that the importation is composed of rice broken into half grains or smaller and contains but a small percentage of whole grains.

On the hearing before the United States Customs Court, F. B. Wise, the secretary-treasurer of the Rice Millers' Association, testified in its behalf that there are three classes of broken rice, known as second-head rice, brewer's rice, and screenings; that second-head rice is the highest class of broken rice, and that screenings is an intermediate grade between second-head and brewer's rice; that second heads, screenings, and brewer's rice are all considered broken rice; that the term "broken rice" in the trade has a *double* meaning which, when applied to *"foreigners,"* meant brewer's rice under the customs act; and that, prior to the Tariff Act of 1922, the term "broken rice" in the domestic rice business was a generic term and "might mean any kind of rice, if broken."

Frank W. Rickert, owner and operator of the Rickert rice mill, represented by the protestant, testified in support of the protest that there are three classes of broken rice, namely, second heads, screenings, and brewer's rice; that second heads is "supposed to be the coarsest broken rice extracted from the high grades, the coarsest.and the largest"; that screenings is the next size of rice extracted from the higher grades, and that brewer's rice is a "low broken rice," never used for home consumption and suitable only for remanufacturing into starch, for brewing beer, and for feed for poultry and cattle; that second heads contains no whole grains; that, during all the time that he had been in the milling business, there had been several grades of broken rice; and that the rice imported was second heads.

T. F. Ryan, a witness for the protestants, testified that he understood that "broken rice" was brewer's rice, but that, literally speaking, there were various kinds of broken rice; that in the trade, rice was designated as fancy head, second heads, screenings, and brewer's rice; that the samples of the shipments shown to him were second heads; and that the term "broken rice" was not used by the trade in the United States.

According to the testimony of Wise and Rickert, the term "broken rice" in the trade includes three grades of broken rice, denominated as second heads, screenings, and brewer's rice.

Theodore Willich, exporter and dealer in rice, testified on behalf of the importers that there were three kinds of broken rice—second heads, screenings, and brewer's rice; that the rice which is the subject of protest is broken rice, second heads; and that second heads and brewer's rice are definite and uniform terms generally used by the trade to designate broken rice.

Percy L. Cormier, of the Cormier Rice Mill Products Co., a witness for the importers, testified that there are three kinds of broken rice, known as second heads, brewer's, and screenings; and that broken rice is bought and sold in the trade as second heads, screenings, and brewer's rice.

T. A. Kimbrough, a wholesale grocer, testified for the importers that there are three kinds of broken rice, known as second heads, screenings, and brewer's rice, and that an order for broken rice would be filled by shipping second heads or fancy screenings.

Gordon W. Callender, rice manager of a company dealing in sugar, rice, coffee, and molasses, testified for the importers that broken rice was known in the trade as second heads, screenings, and brewer's rice; and that the samples of the importation were second heads.

John R. Nurer, in the rice brokerage business, testified for the importers that the samples of the importation were second heads,

and that, in the trade, he knew of two kinds of broken rice—second heads and screenings.

The evidence produced by the protestants and the importers establishes, practically without contradiction, that there are three kinds of broken rice, which are bought, sold, and designated in the trade as second heads, screenings, and brewer's rice. No evidence whatever was submitted proving, or even tending to prove, that the term "broken rice" had in the trade a definite, general, and uniform meaning which excluded second heads, or screenings, or brewer's rice. Indeed the witnesses for both sides in this case were substantially in accord as to what was broken rice, and testified not only that second heads, screenings, and brewer's rice were recognized by the trade as broken rice, but also that broken rice was bought and sold in the trade as second heads, or screenings, or brewer's rice.

Counsel for the protestant, however, contends that the provision for broken rice in paragraph 727 was *intended* by Congress to cover only brewer's rice and not second heads or screenings. We can not agree with that contention without amending paragraph 727 and inserting language which Congress did not see fit to use. If it was the intention of Congress to make the duty of one-half of 1 cent per pound applicable to brewer's rice and not to second heads and screenings, the legislative purpose could have been easily accomplished by providing for "brewer's rice" instead of for "broken rice."

If this court made the substitution which Congress did not elect to make, it would be an inexcusable usurpation of power which belongs to the law-making department of the Government. The provision in paragraph 193 of the act of 1913 for broken rice which would pass through a No. 12 sieve, that is to say, brewer's rice, was not reenacted by paragraph 727 of the act of 1922. To hold, therefore, that it was reenacted would be not only judicial legislation but a clean-cut violation of the well-settled rule that a change of language presumptively implies a change of intention. *United States* v. *Marsching*, 1 Ct. Cust. Appls. 216, 218, T. D. 31257; *Maltus & Ware* v. *United States*, 6 Ct. Cust. Appls. 525, 526, T. D. 36147; *Kupfer Bros. Co.* v. *United States*, 7 Ct. Cust. Appls. 86, 88, 89, T. D. 36423; *Rosenberg & Co.* v. *United States*, 7 Ct. Cust. Appls. 213, 218, T. D. 36510; *Isler & Guye* v. *United States*, 10 Ct. Cust. Appls. 74, 77, T. D. 38339; *United States* v. *Brown & Co.*, 13 Ct. Cust. Appls. 3, 4, T. D. 40846; *United States* v. *Post Fish Co.*, 13 Ct. Cust. Appls. 155, 158, T. D. 41022.

That it is the duty of courts to give effect to the real legislative intention of Congress is true; but it is also true that, in reaching a conclusion as to what that intention was, the courts can not ignore the terms in which the legislative will is expressed. If the language of a constitutional enactment be clear, unambiguous, unmistakable, and not in

irreconcilable conflict with laws *in pari materia*, effect must be given to that language and the idea conveyed by it must be held to express the legislative intent. If the language be of doubtful, indefinite, or uncertain meaning, then the enactment is open to interpretation and its intention may be ascertained by judicially determining the meaning of the words used. In reaching a conclusion as to the purpose of a statute which is ambiguous, uncertain, or obscure, the courts must favor that meaning which does not result in injustice, oppression, an absurd consequence, or conflict with the plain intent of the whole statute. *United States* v. *Kirby*, 74 U. S. 482, 486; *Bate Refrigerating Co.* v. *Sulzberger*, 157 U. S. 1, 37. The wisdom or unwisdom of legislation or the motives which induced the inclusion or omission of certain provisions is not the concern of the courts, if the language of the statute be not open to interpretation. *United States* v. *Fisher*, 2 Cranch 358, 385; *Bate Refrigerating Co.* v. *Sulzberger, supra*, 37, 38.

In this case paragraph 727 lays a duty of one-half of 1 cent per pound on broken rice, and the record discloses without contradiction that the importation described in the protest was broken rice. On what theory, therefore, can a rate of duty other than that provided for broken rice be lawfully applied to the product imported? On the theory, it is answered by appellant's counsel, that the designation "broken rice" meant to Congress brewer's rice, and, therefore, something different from what it meant to the trade and to people in general. That answer would be correct if it had been established that, *commercially*, broken rice was brewer's rice. The testimony, however, clearly proves that in trade and commerce the term "broken rice" is not limited to brewer's rice, and that, as it includes second head rice, screenings, and brewer's rice, it does not mean brewer's rice only. Counsel for the protestant seeks to meet that state of the record by calling attention to the report of the Tariff Commission to Congress in June, 1921. That report states, on page 3, that investigation had revealed that many names and descriptions of commodities could be modified so as to make the tariff law clear, less liable to give rise to litigation, easier to administer, and more in accord with commercial practice and nomenclature. Twenty-four pages later on in the report the Tariff Commission recommended a reclassification of rice into paddy or rough rice, brown rice (hulls removed), milled rice (bran removed), and broken rice and rice meal, flour, polish, and bran. Just how that report and the reclassification suggested therein can affect or modify the meaning of "broken rice" is not apparent. The Tariff Commission did not attempt to define the commercial meaning of "broken rice," and if it had attempted to do so, its definition would have been valueless for judicial purposes. Tariff laws are, it is true, drafted in the language of commerce; but it is presumed, in the absence of evidence to the contrary, that the

common meaning of words is the same as their commercial meaning; and upon those asserting the contrary rests the burden of proving that in the trade the words used in a tariff law have a meaning which differs from their common meaning. *Meyer* v. *United States*, 3 Ct. Cust. Appls. 247, 250, T. D. 32565; *Duden* v. *Arthur*, 7 Fed. Cases 1146, 1147; *Hutton* v. *Schell*, 12 Fed. Cases 1099, 1100; "*Zante Currants*," 73 Fed. Rep. 183; *Tyng* v. *Grinnell*, 92 U. S. 467, 470; *Cadwalader* v. *Zeh*, 151 U. S. 171, 176; *Seeberger* v. *Schlesinger*, 152 U. S. 581, 583. The commercial meaning of tariff terms must be proved by persons engaged in buying and selling the merchandise at wholesale in the United States, or by persons who know, by their own experience or of their own knowledge, the meaning of the designation applied to the merchandise by those who buy and sell it at wholesale. *Watson, Geach & Co.* v. *York Metal & Alloys Co.*, 14 Ct. Cust. Appls. 449, T. D. 42112; *Hutton* v. *Schell, supra; Lamb* v. *Robertson*, 38 Fed. 716; *Stewart, Howe & May Co.* v. *United States*, 113 Fed. 928; *Woolworth* v. *United States*, 113 Fed. 1007.

So far as the record shows, the Tariff Commission is not engaged in the business of buying and selling rice at wholesale in the United States and knows nothing, of its own knowledge or experience, concerning the commercial meaning of the term "broken rice." Even if the commission had reported to Congress that broken rice meant brewer's rice in the trade, such report would have amounted to nothing, inasmuch as commercial designation is to be determined by the courts and not by the Tariff Commission. *Lawrence* v. *Allen*, 7 How. 797. If the members of the Tariff Commission, or any of them, were qualified to testify as to commercial designation they should have been produced as witnesses on the trial before the United States Customs Court, and the value of their testimony determined by that judicial tribunal after submitting themselves for cross-examination as to their qualifications and as to statements made by them on direct examination.

The judgment of the United States Customs Court is *affirmed*.