E. E. KELLY & Co. *v.* UNITED STATES (No. 3117)[1]

United States Court of Customs and Patent Appeals, April 2, 1929

*John Ambler (Ira L. Ewers* of counsel) for appellants.

*Charles D. Lawrence*, Assistant Attorney General (*James R. Ryan* and *Oscar Igstaedter*, special attorneys, of counsel), for the United States.

[Oral argument February 1, 1929, by Mr. Ewers and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

While at the port of Shanghai, China, the master of the steamship *President McKinley* deemed it necessary to cause certain portions of the ship to be painted. The paint was purchased in Seattle, Wash. The labor was performed by a contractor in Shanghai. The ship is "documented under the laws of the United States to engage in the foreign * * * trade," and is engaged "In the oriental trade

---
[1] T. D. 43322;

route." It ordinarily requires a period of four months for the ship to make her run to oriental ports and return to Seattle.

It appears from the record that the hull of the ship above the water line and the superstructure should be painted at least every two months. Ordinarily this work is done by the crew. Occasionally, however, as in this instance, it is necessary to employ additional labor in foreign ports.

On the ship's return to Seattle, an ad valorem duty of 50 per centum of the cost of labor for such painting was assessed by the collector under section 466 of the Tariff Act of 1922, which reads as follows:

SEC. 466. That sections 3114 and 3115 of the Revised Statutes are amended to read as follows:

"SEC. 3114. The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country; and if the owner or master of such vessel shall willfully and knowingly neglect or fail to report, make entry, and pay duties as herein required, such vessel, with her tackle, apparel, and furniture, shall be seized and forfeited.

"SEC. 3115. If the owner or master of such vessel, however, furnishes good and sufficient evidence that such vessel, while in the regular course of her voyage, was compelled, by stress of weather or other casualty, to put into such foreign port and purchase such equipments, or make such repairs, to secure the safety of the vessel to enable her to reach her port of destination, then the Secretary of the Treasury is authorized to remit or refund such duties, and such vessel shall not be liable to forfeiture, and no license or enrollment and license, or renewal of either, shall hereafter be issued to any such vessel until the collector to whom application is made for the same shall be satisfied, from the oath of the owner or master, that all such equipments and repairs made within the year immediately preceding such application have been duly accounted for under the provisions of this and the preceding sections, and the duties accruing thereon duly paid; and if such owner or master shall refuse to take such oath, or take it falsely, the vessel shall be seized and forfeited."

It was claimed by counsel for appellants in the court below, and it is claimed here, that the provisions of section 466, *supra*, providing for a 50 per centum ad valorem duty on the cost of "repairs" made in a foreign country, were not intended to include the cost of painting a ship.

The Government claims to the contrary.

. The court below overruled the protests, and in an opinion by Young, Justice, among other things, said:

The question at issue is whether the painting of the various parts of the superstructure of the vessels is properly classifiable as ship's repairs. If they are in fact ship's repairs, the Secretary of the Treasury alone can fix the cost and determine whether or not duty should be remitted.

There was some testimony offered to show that a vessel needs her hull and superstructure completely repainted about every two months in order to maintain the vessel in a clean, presentable, and sanitary condition. The act of painting is the restoration of a surface to a complete or sound state after partial destruction or injury. The paint on the vessels, through the action of salt water or through natural wear and tear, had become destroyed or partially destroyed so as to expose the surfaces of the vessels to the elements, and, to prevent decay or injury, the paint was applied, restoring the surfaces to their former condition. We are of opinion that the restoration of the painted surfaces to their original state is a repair.

The facts are not disputed and the issue is solely one of law.

Counsel for appellants contend that the word "repair" means the replacement or restoration of a worn-out part of a ship, and that the "painting" here involved should be classed as "maintenance painting." Counsel have attempted to distinguish "maintenance painting" from ship "repairs," and it is argued that the former is performed so as to prevent the necessity of the latter.

The word "repair" is defined by Funk & Wagnalls New Standard Dictionary as follows:

Repair, n.   1. The process of repairing; restoration after decay, waste, injury, or partial destruction; supply of loss; reparation; as, the *repair* of a building; often in the plural; as, to make *repairs* on a roof.

2. Condition after use; especially, good condition; condition after repairing; as, in what *repair* is the house?

The verbs "repair" and "maintain" are defined by the same authority as follows:

Repair, vt.   1. To mend, add to or make over; as, to *repair* a building.

2. To restore to a sound or good state; as, to *repair* health.

Maintain, v.   1. To hold or preserve in any particular state or condition; keep effective and from falling, declining, or ceasing;   *   *   *.

2. To supply with means of support; provide for; sustain; keep up;   *   *   *.

The word "maintenance" is defined as follows:

Maintenance, n.   1. The act of maintaining, in any sense;   *   *   *   maintenance of way (*railroad*), the keeping in repair of tracks, roadbeds, bridges, etc.

It is a matter of common knowledge that the words "maintain" and "maintenance" are frequently used in the sense of keeping a thing in good condition by means of "repairs." For example, *to maintain* a highway, ordinarily, means to keep it in a proper state of repair. Obviously, "maintenance," whether used in connection with a ship or other thing, means to keep or preserve in a good condition. This may, and frequently does, involve the making of repairs.

While the involved painting was not occasioned by any damage or injury to the ship's structure, it was occasioned by deterioration and damage to the paint thereon. Paint is essential to the preservation of the ship's structure. When applied, it is a part of the ship. Whether the paint is destroyed by weather or by other causes is of

little consequence. When destroyed, it must be restored. We are of opinion, therefore, that the language, "the expenses of repairs made in a foreign country," contained in section 466, *supra*, is sufficiently comprehensive to include money paid to the foreign contractor for labor performed in painting the ship.

However, we need not rely entirely upon the dictionary definitions for a solution of the problem. Thirty years ago the Board of General Appraisers (now United States Customs Court), in the case of *H. S. Folger* v. *United States*, T. D. 21670, G. A. 4575, held, in an opinion by Somerville, G. A., that expenses incurred in painting a vessel in a foreign port, "which is no less for preservation than ornamentation, is an expense of the kind embraced in the statute." The statute there involved was section 3114 of the Revised Statutes, now a part of section 466, *supra*.

Several tariff acts have been passed since the decision in the Folger case, supra, and, while the Congress is presumed to have had knowledge of this decision, the statute in question has not been materially changed. In view of the fact that the statute was reenacted as a part of the Tariff Act of 1922, it must be presumed that the construction placed upon it in the *Folger* case met with the approval of the Congress. The application of the doctrine of legislative approval of judicial interpretation and construction is decisive of the issue in the case. See *United States* v. *Bassichis Co. et al.*, 16 Ct. Cust. Appls. 410, T. D. 43133, and cases therein cited.

It has been suggested by counsel for appellants that in "nautical circles" the word "repairs" is not understood to include so-called maintenance painting. This may be so. However, the trouble with the argument is that there is no legal evidence in the record to sustain it. While tariff statutes are directed to trade and commerce, nevertheless the commercial meaning of a tariff term is presumed to be the same as its common meaning. *Rice Millers' Association American Manufacturers* v. *United States and Oberle (Inc.)*, 15 Ct. Cust. Appls. 355, T. D. 42560. If the word "repairs" has a restricted meaning in the trade and commerce of the United States which excludes so-called maintenance painting, it was incumbent upon appellants to prove that fact by a preponderance of the evidence. Furthermore, it is elementary that the evidence must show that such restricted trade meaning is uniform, definite, and general, and not partial, local, or personal. *La Manna, Azema & Farnan* v. *United States*, 14 Ct. Cust. Appls. 289, T. D. 41908; *Lamont, Corliss & Co. et al.* v. *United States*, 16 Ct. Cust. Appls. 488, T. D. 43224.

It is true that the witness Captain Frobert answered the following question in the negative: "Q. Captain Frobert, is maintenance and painting considered repairs in the ordinary sense in which that word

is used in nautical circles?" However, there is no evidence that the trade designation of the word "repairs" was uniform, definite, and general.

For the reasons stated the judgment is *affirmed*.