(C. D. 1546)

MICHIGAN BULB COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided August 12, 1953)

*John C. Ray* (*Leland D. Phelps* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Arthur R. Martoccia, Richard H. Welsh, William J. Vitale, Mollie Strum*, and *Chauncey E. Wilowski*, special attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge:  This is a protest against the collector's assessment of duty on merchandise described as "planting stock, mixed tulip bulbs" at $3 per thousand under paragraph 753 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as "Tulip bulbs."  It is claimed that the merchandise is properly dutiable at 10 per centum ad valorem under the provision in said paragraph, as modified, for "All other bulbs * * * imported for horticultural purposes and not specifically provided for."

The pertinent provisions of the tariff act, as modified, are as follows:

| Tariff Act of 1930, paragraph | Description of products | Rate of duty |
|---|---|---|
| 753 | Tulip bulbs_____ | $3 per 1000 |
| | * . * * * * * * | |
| 753 | All other bulbs, roots, rootstocks, clumps, corms, tubers, and herbaceous perennials, imported for horticultural purposes and not specifically provided for_____ | 10% ad val. |

It was ·conceded at the trial that the items involved herein ranged in sizes from 5 to 8 centimeters in circumference, and plaintiff claims that such merchandise is not known commercially as tulip bulbs.

In order to prove commercial designation, plaintiff called four witnesses in Detroit, one witness in New York, and one witness in Seattle. Their experience in connection with tulip bulbs is outlined below:

Forrest Laug, an officer of the plaintiff corporation, has been in the mail-order bulb business in Michigan for 10 or 11 years. His firm purchases tulip bulbs both abroad and in the three main production centers in the United States, namely, the States of Michigan, New York (Long Island), and Washington, and sells them in all parts of the United States, Puerto Rico, Hawaii, and Canada.

Fred Nagel has been a bulb grower for 30 years in partnership with his father and brothers. His firm purchases bulbs from local growers in Michigan, growers on the west coast and from the Netherlands, and sells them in all states of the United States.

Cyrus A. Boyer was a professor of horticulture at Texas A. & M. College for 2 years; has been Chief of the Bureau of Plant Industry in the Michigan State Department of Agriculture for 15 years and, previously, field chief since 1924; is a collaborator with the Bureau of Entomology and Plant Quarantine of the United States Department of Agriculture and chairman of the Central Plant Board, governing 13 states; and was secretary of the National Plant Board for 9 years. His work includes the enforcement of laws pertaining to insects and diseases in the sale of plant materials, including the growing and sale of tulip bulbs, and the inspection of all planting stock coming into the State of Michigan. He works directly with the bulb industry in connection with the enforcement of false advertising laws and confers with bulb growers and sellers when they desire legislation or regulations dealing with their business.

John Nieuwenhuis has been a bulb grower in Michigan since 1928. He purchases bulbs from growers in Michigan and Long Island and sells them in every state of the United States.

Boudewyn Philippo has been in the bulb business since 1926 ever since he left horticultural school in Holland. He has been in the business of growing and trading in tulip bulbs in the United States since on or about June 17, 1930, has sold bulbs in all sections of the United States, has grown them on Long Island, and has purchased them from growers on the Pacific coast and in Michigan.

Julius Rosso has been in the tulip bulb business since September 1929 and is now an owner and general manager of Seattle Flower Growers, Inc. His firm buys tulip bulbs and planting stock from growers in the State of Washington and sells them to customers at wholesale all over the country.

Defendant called two witnesses in Seattle—

Robert E. Chevalier, secretary and sales manager of Olaf Monrad Bulb Co., who testified that he has been in the bulb business since 1937 and that his firm sells bulbs as far as North Dakota and in five or six western states, and

Jerome K. Feroe, a wholesaler and importer of flower bulbs, whose experience with tulip bulbs dates back to 1932.

The testimony of these witnesses establishes the following facts in regard to the raising of tulips: Tulip bulbs can be grown from seed and are so produced by hybridizers and men originating new varieties. Tulip bulbs are also produced from offsets grown by so-called mother

bulbs. When a mother bulb is planted, it will produce one to six or seven offsets. These offsets are flat on the side which rests against the mother bulb and contain food which helps them to grow when they are taken off and planted. When sown, they develop into larger, rounder items. These are dug up and replanted, sometimes for two or three seasons, until bulbs which will flower are produced.

Tulip bulbs and offsets are measured by the number of centimeters in the circumference at the largest part. Measurements are made over a series of plates having different circumferences. A 4- or 5-centimeter bulb, when planted, will produce a 9-centimeter bulb by the following year. A bulb of 9 or 10 centimeters contains the complete flower and foliage in embryo state, whereas a bulb of lesser size does not. Bulbs of 6, 7, or 8 centimeters in circumference must be cultivated for a year or two before they will produce flowers. Bulbs of 9 or 10 centimeters and over will flower the first year. The smaller bulbs or offsets were described by the witnesses as divisions of bulbs, splits off the mother bulb, bulblets, pips, seedlings, offshoots, the propagating part of the bulb, and propagating stock.

The witnesses Boyer and Nieuwenhuis stated that the following definition of the terms "tulip" and "tulip bulb" from the Winston Simplified Dictionary of 1935 gave the common meaning of those terms: "A plant of the lily family bearing brilliant flowers in spring; also, its bulb or flower." Mr. Philippo did not agree with the part of the definition that states that the tulip belongs to the lily family; he had been taught that it belonged to the *Tulipa* family. He accepted the following definition from Webster's Second Unabridged Dictionary as the common meaning: "Any plant of the genus Tulipa; also, its flower or bulb."

Plaintiff's witnesses testified that the commercial meaning of the term "tulip bulb" is different from the common meaning of that term. Mr. Laug, Mr. Nagel, Mr. Boyer, Mr. Nieuwenhuis, and Mr. Philippo stated that the term "tulip bulb," as used in the trade and commerce of the United States, refers to bulbs having a circumference of 10 centimeters or more, while anything smaller than that is called planting stock. Mr. Boyer stated that in the trade a bulb is not designated as a tulip bulb until it is capable of producing a flower. He said that while some bulbs of 9 centimeters in circumference will flower the first season, only 10 to 30 per centum of them will, whereas 100 per centum of the bulbs of 10 centimeters or more will bloom. Similar testimony was given by Mr. Philippo. Mr. Rosso also stated that in the trade the term bulb is applied to a bulb that will bloom the first year it is planted. He said that a 9-centimeter bulb is the smallest bulb that will bloom the first year and that anything 8 centimeters in circumference or less is called planting stock in the trade. Mr. Laug's experience did not go back to 1930, but plaintiff's

other witnesses stated that these meanings of the terms "tulip bulbs" and "planting stock" were general, definite, and uniform throughout the United States at and prior to the date of the enactment of the Tariff Act of 1930 (June 17, 1930).

Defendant's witness, Robert E. Chevalier, testified that his firm deals only in tulip bulbs of 10 centimeters or over, those being the sizes offered to the public for blooming. He said that it is the common practice within the industry to designate tulip bulbs of 8 centimeters and below as planting stock. This witness and defendant's other witness, Mr. Feroe, referred to certain varieties of tulips whose bulbs do not become larger than 5, 6, or 7 centimeters. However, they said that these are botanical types seldom seen by the public. Mr. Feroe agreed otherwise with the testimony of Mr. Rosso that tulip bulbs of 8 centimeters and under are defined by the trade as planting stock, while larger sizes are called bulbs.

Defendant also placed in evidence an advertisement of the United States Dutch Bulb Corp., appearing on page 8 of the September 1952 issue of a magazine called "Flower Grower," offering bulbs averaging 3 inches in circumference (approximately 7 or 8 centimeters). Mr. Chevalier testified that this advertisement was made to the retail and not to the wholesale trade.

The witnesses all agreed that the items designated in the trade as bulbs, that is, those over 9 or 10 centimeters in circumference, are bought and sold by the count, usually by the thousand, but that planting stock is bought and sold by the bushel, pound, or ton.

Several of the witnesses testified that an order for tulip bulbs would not be satisfied by a delivery of items of 9 centimeters or less in circumference, nor would an order for planting stock be satisfied by delivery of items of 10 centimeters or more.

The question to be decided is whether the term "tulip bulb" is a commercial designation which in its trade understanding excludes the merchandise at bar. It is well settled that where tariff terms have a signification in the wholesale trade of the United States different from the common meaning, the commercial designation prevails, unless Congress has clearly manifested a contrary intention. *Cadwalader* v. *Zeh*, 151 U. S. 171; *Del Gaizo Distributing Corp.* v. *United States*, 24 C. C. P. A. (Customs) 64, T. D. 48376. It is presumed, however, that the commercial meaning is the same as the common meaning, and the burden of proof rests upon the party asserting the contrary. *United States* v. *Georgia Pulp & Paper Manufacturing Co.*, 3 Ct. Cust. Appls. 410, T. D. 32998; *Nylos Trading Company* v. *United States*, 37 C. C. P. A. (Customs) 71, C. A. D. 422. Commercial designation is the result of established trade usage which must be shown to be definite, uniform, and general throughout the United States, not partial, local, or personal. *Maddock* v. *Magone*, 152 U. S. 368;

*Edward Brenner* v. *United States*, 23 C. C. P. A. (Customs) 190, T. D. 48030; *United States* v. *C. J. Tower & Sons*, 40 C. C. P. A. (Customs) 14, C. A. D. 491. The evidence must relate to the designation of the particular merchandise in the trade and commerce of the country at or prior to the date of enactment of the pertinent tariff statute. *United States* v. *Georgia Pulp & Paper Manufacturing Co., supra; Smillie & Co.* v. *United States*, 12 Ct. Cust. Appls. 365, T. D. 40520; *United States* v. *Fung Chong Co.*, 34 C. C. P. A. (Customs) 40, C. A. D. 342. Proof must be made "by persons engaged in buying and selling the merchandise at wholesale in the United States, or by persons who know, by their own experience or of their own knowledge, the meaning of the designation applied to the merchandise by those who buy and sell it at wholesale." *Rice Millers' Association*, *American Manufacturers* v. *United States and Oberle (Inc.)*, 15 Ct. Cust. Appls. 355, 360, T. D. 42560.

Since it is presumed that the common meaning and the commercial meaning are the same, part of plaintiff's burden of proof is to establish that the trade meaning differs from the common understanding, but it is not necessary for a witness to state in so many words that the two differ. *Stephen Rug Mills* v. *United States*, 32 C. C. P. A. (Customs) 110, C. A. D. 293. In the instant case, some of the witnesses stated that the commercial meaning differed from the common meaning and that certain dictionary definitions, quoted *supra*, gave the common meaning. Mr. Boyer stated that an offset of 5 centimeters is a bulb within common knowledge, and Mr. Rosso testified that the 5 centimeter is a younger bulb and the 10 centimeter an older bulb; that they are both tulip bulbs, but the former has a commercial designation as planting stock and the latter as tulip bulbs.

The common meaning of a term is a matter of law to be determined by the court, and the testimony of witnesses is advisory only. In making this determination, the court may rely upon its own understanding and may consult dictionaries, lexicons, and other written authorities. *United States* v. *John B. Stetson Co.*, 21 C. C. P. A. (Customs) 3, T. D. 46319; *United States* v. *O. Brager-Larsen*, 36 C. C. P. A. (Customs) 1, C. A. D. 388.

The following definitions from Webster's New International Dictionary (1951 ed.) are pertinent:

**tulip** * * * **1. a** Any plant of the genus *Tulipa*; also, its flower or bulb. * * *

**bulb** * * * **1.** A variously shaped bud, usually subterranean, consisting of a short, thick stem emitting roots from below, and bearing a number of membranous or fleshy, overlapping, scalelike leaves. * * * The bulb is the resting stage of the plant, and contains food for use when growth is resumed. Bulbs are formed by many monocotyledonous plants, as the lily, onion, hyacinth, tulip.

**bulblet** * * * A small or secondary bulb; specif., *Bot.*, a bulbil.

**bulbil** * * * **1.** *Bot.* **a** A small or secondary bulb; hence, an aerial bulb or deciduous bud, produced in the leaf axils, as in the tiger lily, or replacing the flowers, as in some onions, and capable, when separated, of propagating the plant;—called also *bulblet* and *brood bud.*

In our view, a tulip bulb in common understanding is the subterranean bud of the tulip plant which eventually produces a tulip flower. Thus, even a small bulb, bulblet, or bulbil of the tulip family is a tulip bulb.

The trade understanding of the term, as stated by the witnesses, is different. According to their testimony, the term "tulip bulb" is used to refer only to a bulb of 9 or 10 centimeters and over, which will produce a tulip flower the first year it is planted. Small bulbs or offsets of less than 9 or 10 centimeters in circumference, which will not flower, are not considered tulip bulbs. Some of the witnesses stated that a 9-centimeter bulb will flower; therefore, they defined it as a tulip bulb. The majority of the witnesses confined this term to 10-centimeter bulbs, stating that substantially less than 100 per centum of the 9-centimeter bulbs will produce flowers.

All of the witnesses who testified had had experience either as wholesale dealers in or producers of tulip bulbs or had had contact with the industry through Government service. The uncontradicted evidence indicates that there are three main production centers in the United States, in the States of Michigan, New York, and Washington, and witnesses from each of these areas testified as to the trade meaning of the term "tulip bulb." Moreover, plaintiff's witnesses, Laug, Nagel, Nieuwenhuis, Philippo, and Rosso, sold bulbs in all sections of the United States. Although the witness Laug was not in the tulip business at or prior to the date of the enactment of the Tariff Act of 1930 (June 17, 1930), plaintiff's other witnesses, whose experience extended back to that time, testified that the commercial designation was definite, uniform, and general throughout the United States at or prior to that date. This evidence establishes that a differentiation is drawn in the trade between tulip bulbs which produce a flower the first year they are planted, said bulbs being 9 or 10 centimeters in circumference or over, and bulbs which do not flower without further cultivation, such bulbs being under 9 or 10 centimeters in circumference. The former is designated as "tulip bulbs" by the trade and the latter as "planting stock."

The rule of commercial designation was intended to apply in cases where the trade designation is so universal and well understood that Congress and the trade are supposed to have been fully acquainted with the practice at the time the law was enacted. *Jas. Akeroyd & Co.* v. *United States*, 15 Ct. Cust. Appls. 440, T. D. 42641. It is to be noted in this connection that all of the witnesses testified that merchandise known commercially as tulip bulbs is bought and sold

by the count, usually by the thousand, and that merchandise designated as planting stock is dealt in by the bushel, pound, or ton. The fact that the tariff provision for tulip bulbs assesses duty by the thousand is an indication that Congress intended it to cover merchandise designated by the trade as tulip bulbs, which is bought and sold by the count.

In view of the record herein, we are of opinion that Congress used the term "tulip bulbs" in paragraph 753 in its known commercial sense, and we are satisfied that plaintiff has established by the weight of the evidence that the term "tulip bulbs" has a commercial meaning which differs from its common meaning in that it includes only tulip bulbs which will flower the first season they are planted, said bulbs being 9 or 10 centimeters in circumference or over, and that that meaning was general, definite, and uniform throughout the United States at and prior to June 17, 1930.

Accordingly, since the merchandise involved herein consists of items which measure from 5 to 8 centimeters in circumference, such bulbs being ones that do not flower the first season, it is not subject to classification as tulip bulbs under paragraph 753 of the Tariff Act of 1930, as modified.

Plaintiff claims that the imported merchandise is properly classifiable under the provision in paragraph 753, as modified, for "All other bulbs, roots, rootstocks, clumps, corms, tubers, and herbaceous perennials, imported for horticultural purposes and not specifically provided for." It is apparent that this provision is a catchall clause intended to cover all types of bulbs, bulblets, roots, etc., which are cultivated for the production of flowers or plants and for which special provision has not been made. We hold, therefore, that the instant merchandise, having been excluded from the provision for "tulip bulbs," is properly dutiable under paragraph 753 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, at 10 per centum ad valorem, as bulbs, imported for horticultural purposes and not specifically provided for.

The protest is sustained and judgment will be rendered for the plaintiff.