# United States Court of Appeals for the Federal Circuit

_____

**HORIZON LINES, LLC,**
*Plaintiff-Appellee,*

**v.**

**UNITED STATES,**
*Defendant-Appellant.*

_____

2010-1138

_____

Appeal from the United States Court of International Trade in Case No. 07-CV-0039, Judge Evan J. Wallach.

_____

Decided: December 6, 2010

_____

EVELYN M. SUAREZ, William Mullen PC, of Washington, DC, argued for plaintiff-appellee. With her on the brief were GEORGE J. BOWLES, DEAN A. BARCLAY and J. FORBES THOMPSON. Of counsel was ROBERT ZUCKERMAN, Horizon Lines, LLC, of Charlotte, North Carolina.

EDWARD F. KENNY, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, of

Washington, DC; BARBARA S. WILLIAMS, Attorney in Charge, and JASON M. KENNER, Trial Attorney, of New York, New York. Of counsel on the brief was MICHAEL W. HEYDRICH, United States Customs and Border Protection, of New York, New York.

---

Before RADER, *Chief Judge*, LOURIE and MOORE, *Circuit Judges.*

MOORE, *Circuit Judge.*

The government appeals the decision of the Court of International Trade concluding that the government owed Horizon Lines, LLC (Horizon) a refund for duties imposed on certain work performed on the ocean carrier Horizon Hawaii (Hawaii) while the ship was overseas. *See Horizon Lines, LLC v. United States*, 659 F. Supp. 2d 1285, 1290 (Ct. Int'l Trade 2009). We conclude that the Court of International Trade erred when it held that the prior condition of replaced parts is irrelevant to the determination of whether work constitutes a nondutiable modification or a dutiable repair. However, because the Court of International Trade determined that the replaced parts on the Hawaii were in proper working order prior to modification, this error was harmless. We thus conclude that the Court of International Trade did not clearly err when it determined that the work constituted a nondutiable modification, rather than a dutiable repair. We affirm.

## BACKGROUND

Horizon operates the Hawaii, a cargo ship that transports shipping containers. The shipping containers are stacked in columns (cells) in the ship's hold, which is located below the main deck. Cell guides direct the

containers vertically down into the hold's cells. Entry guides sit at the top of the hold above the cell guides, receive containers lowered by a crane operated 80 feet above the deck, and direct the containers to the appropriate cell.

In 2002, while at a shipyard in Lisnave, Mitrena Yard in Setubal, Portugal, Horizon had the Hawaii's entry guides for cells 5, 6, and 7 (together with top portions of integrally connected cell guides) replaced with modified guides. The modified guides incorporated new design features, including a more pronounced funnel shape, which makes it easier for a crane operator to lower containers into the guides.

When the Hawaii returned to the United States, U.S. Customs & Border Patrol (Customs) imposed duties on the modified guides under 19 U.S.C. § 1466(a), which requires Customs to assess duties on the expenses of repairs made in a foreign country.[1] Horizon filed a protest, which Customs denied with respect to the modified guides. Horizon paid the assessed duties and filed a complaint in the Court of International Trade, alleging that the modified guides constituted a nondutiable modification, rather than a dutiable repair made in a foreign country.

The Court of International Trade concluded that the modified guides constituted nondutiable modifications, rather than dutiable repairs. *Horizon*, 659 F. Supp. 2d at 1290. The court found that the modified guides constituted a new design feature that substantially improved the speed and ease of container loading, substantially

---

[1] Customs imposed duties on other work performed overseas on the Hawaii. This appeal concerns only the work performed on cell entry guides 5, 6, and 7.

reduced the susceptibility of the cell guide system to damage, reduced the need for voyage repairs, and improved the safety of cargo operations. *Id.* at 1287. The court further found that the modified guides replaced cell and entry guides that were in full proper working order when the Hawaii arrived at Lisnave. *Id.* In support of these findings, the court found the testimony of Horizon's port engineer, Mark Cianci, highly probative and credible. *Id.* The court credited Mr. Cianci's testimony that he would have been informed if any of the prior cell entry guides were not in good working order at the time the vessel arrived in Lisnave, and that he was not so informed. *Id.* The court found that the government presented no evidence that the Hawaii needed the modified guides to correct deficient performance. *Id.* at 1288. Rather, the court found that the evidence was conclusive that the modified guides were intended to improve the performance of the original design. *Id.* The court noted that Horizon commissioned a naval architect and marine engineer to prepare drawings for the new guides. *Id.* The court found that if the work had been a repair, Horizon would have used the original design to restore the cell entry guides to their original condition. *Id.* The court found the expert testimony of Edwin T. Cangin that the work constituted a modification highly probative and credible. *Id.* The court noted that the government did not offer any testimony to rebut that of Mr. Cangin. *Id.* The court noted that the government's witness, Peter D. Kahl, an experienced port engineer, considered the work to be a modification. *Id.* The court further found that the analysis relied on in Customs' protest decision was unreliable because, among other things, the analysis was prepared by someone with limited experience in the area who, until the time of her deposition in this litigation, did not understand the difference between a cell guide and an entry guide. *Id.*

The court determined that for purposes of 19 U.S.C. § 1466(a), the term "repairs" describes "putting something that has sustained damage back into working condition whereas the term 'modifications' describes work addressing a systematic problematic feature." *Horizon*, 659 F. Supp. 2d at 1289. The court distinguished *Texaco Marine Services, Inc. v. United States*, 44 F.3d 1539, 1544 (Fed. Cir. 1994), in which we stated that in the context of 19 U.S.C. § 1466(a), "the language 'expenses of repairs' is broad and unqualified." *Horizon*, 659 F. Supp. 2d at 1289. The court explained that in *Texaco*, we interpreted the language to cover all expenses (other than those excepted in the statute) that, but for the dutiable repairs, would not have accrued. *Id.* The court stated that *Texaco* did not address the distinction between a repair and a modification. *Id.* The court concluded that newly designed installations on a vessel are alteration of the ship design and not repairs, citing *United States v. Admiral Oriental Line*, 18 C.C.P.A. 137, 141 (1930). *Horizon*, 659 F. Supp. 2d at 1289. The court determined that "[b]ecause the HAWAII's cell entry guides, after the shipyard work, exhibited new design features that improved or enhanced the vessel's operation or efficiency, the 'good working order' condition of the cell entry guides, before the shipyard work, is not a relevant consideration in determining whether the work constitutes a non-dutiable modification, for purposes of 19 U.S.C. § 1466(a)." *Id.* at 1289-90. The court further determined that the fact that the modified guides reduced the potential for future damage did not transform the work into a repair. *Id.* at 1290. The court thus concluded that Customs incorrectly assessed duties for the new guides and owed Horizon a refund of $104,560.00. *Id.* The government appeals, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

### DISCUSSION

We review legal determinations of the Court of International Trade *de novo* and findings of fact for clear error. *Jazz Photo Corp. v. United States*, 439 F.3d 1344, 1349 (Fed. Cir. 2006). "The clear error standard requires us to accept the Court of International Trade's findings of fact unless we are left with a definite and firm conviction that a mistake has been committed." *Id.* (quotation marks omitted). We review evidentiary determinations for abuse of discretion, *id.*, and will only interfere with such determinations if an erroneous ruling prejudiced substantial rights, *see Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 147 F.3d 1374, 1380 (Fed. Cir. 1998).

The government argues that the Court of International Trade erred as a matter of law by interpreting "repairs" to exclude the modified guides. Specifically, the government asserts that the court erred by interpreting "repairs" to include work that puts something that has sustained damage back into working condition but to exclude work that addresses a systematic problematic feature. The government argues that the term "repair" should be broadly construed, citing *Texaco*, 44 F.3d at 1544. The government also argues that we must interpret "repair" according to its plain meaning, citing *E.E. Kelly & Co. v. United States*, 17 C.C.P.A. 30 (1929), and *American Mail Line, Ltd. v. United States*, 24 C.C.P.A. 70 (1936).

The government further argues that the Court of International Trade erred as a matter of law when it determined that the condition of the old cell entry guides was irrelevant. The government explains that Customs considers the condition of a replaced part when determining whether work constitutes a repair or a modification. The

government asserts that the term "repairs" includes an upgrade if the upgrade restores an old part to proper working order.

The government also contends that the court erred when it concluded that the old cell entry guides were in proper working order. According to the government, the court erred by relying on Mr. Cianci's testimony that Horizon routinely reported and repaired cell damage. The government asserts that because there was no direct evidence on point, the court must have relied on Federal Rule of Evidence (FRE) 406, which states that evidence of a habit or routine practice is relevant to prove that the person or business acted in conformity therewith. The government asserts that the testimony of Mr. Cianci was insufficient as a matter of law to establish a routine business practice under FRE 406 because he did not testify about specific instances of the business practice. The government asserts that other evidence belies any such business practice, noting that when the Hawaii arrived at the Lisnave shipyard, cell entry guides 5, 6, and 7 were not inspected, and all of the cell entry guides that were inspected exhibited damage. The government asserts that this shows that Horizon did not repair damage at port prior to arriving at the shipyard. The government also cites the testimony of Mr. Kahl, who explained that not all ship officers report damage, and port engineers might ignore some damage reports. The government further cites the testimony of Mr. Kahl that on one occasion, a damage report indicated that a cell was unusable but the cell was not repaired for two months. The government thus asserts that Mr. Cianci may not have known of damage to the cell entry guides.

Horizon responds that the Court of International Trade correctly determined that the new guides consti-

tuted a nondutiable modification, citing *Admiral Oriental*, 18 C.C.P.A. at 141. Horizon asserts that it installed the new guides to reduce the potential for future damage and to improve the speed and efficiency of container loading, not to repair old damage. Horizon further asserts that prior to the modification, the old cell entry guides were in proper working order in that they were able to accept cargo and were actually being used for that purpose. Horizon explains that because it is in the business of cargo transport, it routinely reports and immediately repairs any damage that would prevent container transport.

Horizon further responds that the Court of International Trade correctly concluded that the condition of the old guides was irrelevant. Horizon asserts that evidence of prior good working order suffices to show that a repair did not take place, while evidence of prior disrepair is necessary but not sufficient to prove that a repair took place. Horizon asserts that the condition of the old cell entry guides was not relevant because Horizon planned to modify those guides regardless of their condition.

As to the government's evidentiary arguments, Horizon asserts that the court properly considered Mr. Cianci's testimony. Horizon explains that FRE 406 gives courts discretion to consider evidence of business practice on a case-by-case basis. Horizon contends that FRE 406 does not require specific instances of conduct, noting that Congress deleted a subsection of FRE 406 that identified "specific instances of conduct" as one of several ways to establish routine practice. Horizon asserts that the evidence that the old cell entry guides were in proper working order, including Mr. Cianci's testimony, was probative and credible. Horizon contends that the testimony of Mr. Kahl does not undermine Mr. Cianci's testi-

mony because when Mr. Kahl testified that not all damage was reported, he did not distinguish between damage that would prevent cargo transport and damage not affecting the carriage of cargo. Horizon also asserts that Mr. Cianci's testimony was cumulative of other evidence that the cell entry guides were in good working order.

We agree with the Court of International Trade that the term "repairs" in 19 U.S.C. § 1466 describes "putting something that has sustained damage back into working condition." *Horizon*, 659 F. Supp. 2d at 1289. Nothing in the statute indicates that the term "repairs" has a special meaning within § 1466. Our predecessor court, the Court of Customs and Patent Appeals, determined that the term "repairs" in the context of § 1466 has its plain and ordinary meaning. *Am. Mail Line*, 24 C.C.P.A. at 73; *see also Admiral Oriental*, 18 C.C.P.A. at 141 (citing *E.E. Kelly & Co. v. United States*, 17 C.C.P.A. 30, 32 (1929)). As indicated in these cases, repair means:

> Repair, n. 1. The process of repairing; restoration after decay, waste, injury, or partial destruction; supply of loss; reparation; as, the *repair* of a building; often in the plural; as, to make *repairs* on a roof. 2. Condition after use; especially, good condition; condition after repairing; as, in what *repair* is the house?
>
> Repair, vt. 1. To mend, add to or make over; as, to *repair* a building. 2. To restore to a sound or good state; as, to *repair* health.

*E.g. Admiral Oriental*, 18 C.C.P.A. at 141.

The Court of International Trade erred, however, in concluding that the condition of the replaced part is

irrelevant to a determination of whether such a replacement constitutes a repair. The plain meaning of "repair" describes putting something that has sustained damage back into working condition. It requires "restoration after decay, waste, injury, or partial destruction"—all of which indicates that the part being repaired was damaged— which necessitated the repair. Thus, the prior condition of a part that is removed or replaced during work on a vessel is relevant to whether that work constitutes a repair. We do not conclude, however, that the prior condition is always dispositive of whether work constitutes a repair or modification. We note that there would be no need to repair a part that is in working order. It is unnecessary for us to decide in this case whether replacement of a defective part with an upgraded, different part constitutes a repair or modification.

Section 1466 does not impose a duty upon alterations of ship design that constitute modifications rather than repairs. *Admiral Oriental*, 18 C.C.P.A. at 141. In *Admiral Oriental*, the court concluded that the installation of swimming tanks on steamships could not be regarded as repairs. The ships had previously been used to transport troops in wartime but were converted to first-class passenger ships after World War I. *Id.* at 137. The superintendent of the shipping line explained that the installation of the swimming tanks was made necessary in part by the change in routes of the ships through southern waters. *Id.* at 138. The court rejected the government's argument that the installation constituted a repair, reasoning that "[t]he word 'repair,' as the word 'amend,' contemplates an existing structure which has become imperfect by reason of the action of the elements, or otherwise." *Id.* (quoting *Gagnon v. United States*, 193 U.S. 451, 457 (1904)). Following this decision, Customs has held that modifications, alterations, or additions to

the hull of a vessel are not subject to vessel repair duties. *See, e.g.*, HQ 116627 (Mar. 16, 2006); HQ 112890 (Oct. 12, 1993).

Whether work constitutes a repair or a nondutiable modification is a factual inquiry to be determined on a case-by-case basis. We agree with the Court of International Trade that the term repairs "describes putting something that has sustained damage back into working condition whereas the term 'modifications' describes work addressing a systematic problematic feature." *Horizon*, 659 F. Supp. 2d at 1289. In light of this definition, we conclude that the court erred when it held that the condition of the old cell entry guides was irrelevant to the determination of whether work constitutes a nondutiable modification or a dutiable repair.

In this case, however, the court went on to find that the old cell entry guides were in full proper working order when the Hawaii arrived in Lisnave, and because this finding is not clearly erroneous, we affirm. The court found the testimony of Horizon's port engineer, Mr. Cianci, highly probative and credible. We see no error, evidentiary or otherwise, in the court's consideration of this evidence. As the record reflects, Horizon prepared in advance of its arrival into Lisnave to have the cell entry guides at issue replaced with newly designed guides that would improve the speed and ease of container loading, reduce susceptibility to damage, and improve safety – in short it prepared to upgrade the cell entry guides. Because the cell entry guides were in full proper working order when they were replaced with the substantially upgraded guides, the facts of this case support the Court of International Trade's conclusion that the replacement of the cell guides constituted a nondutiable modification.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Court of International Trade.

## AFFIRMED